**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward Avery HERNDON,
Defendant–Appellant.**

**No. 91–7077.**

United States Court of Appeals,
Tenth Circuit.

Dec. 8, 1992.

1412

sessed the items subject to the forfeiture count at his trial on the VIN alteration and removal counts contrary to Federal Rule of Evidence 404(b). Second, he contends that the district court should have treated his stipulation agreement concerning the forfeiture as a guilty plea subject to the "core" requirements of Federal Rule of Criminal Procedure 11. Third, Herndon believes the district court improperly enhanced his sentence under the guidelines by valuing one of the vehicles involved at the time it was stolen rather than at the time he altered its VIN. Fourth, and finally, Herndon contends that the district court exceeded its statutory authority by ordering him to make restitution based on the entire value of one of the vehicles involved rather than the amount of damage he caused by altering its VIN. For the reasons which follow, we affirm the district court's decision in part, vacate in part, and remand the cause for further proceedings consistent with this opinion.

D. Michael Littlefield, Asst. U.S. Atty. (John Raley, U.S. Attorney, with him on the brief), Muskogee, OK, for plaintiff-appellee.

Jill M. Wichlens, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, CO, for defendant-appellant.

Before: LOGAN, ENGEL * and KELLY, Circuit Judges.

ENGEL, Senior Circuit Judge.

Edward Avery Herndon appeals his conviction on two counts of altering and removing motor vehicle identification numbers ("VINs") and his stipulated forfeiture of certain items containing altered VINS. He raises four issues on appeal. First, Herndon argues that the district court improperly admitted evidence that he pos-

## I. FACTS

On November 14, 1990, the United States filed an indictment against Edward Avery Herndon charging him with three counts relating to the alteration and removal of VINs. Count one alleged that in April, 1986, Herndon willfully and knowingly removed the VIN from a stolen 1985 GMC Sierra pickup truck and replaced it with the VIN from a salvaged 1983 Chevrolet pickup truck. Count two alleged that in June, 1987, Herndon similarly replaced the VIN from a stolen 1982 GMC four-wheel drive diesel pickup truck with a VIN from a salvaged 1981 Chevrolet pickup truck. Both counts one and two alleged violations of 18 U.S.C. § 511.[1] Count three sought criminal forfeiture under 18 U.S.C. § 512 of certain items in Herndon's possession which also contained altered VINs.[2] These

---

* Honorable Albert J. Engel, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. 18 U.S.C. § 511(a) provides:

 Whoever knowingly removes, obliterates, tampers with, or alters an identification number for a motor vehicle, or motor vehicle part,

shall be fined not more than $10,000 or imprisoned not than five years, or both.

2. 18 U.S.C. § 512 provides:

 If an identification number for a motor vehicle or motor vehicle part is removed, obliterated, tampered with, or altered, such vehic-

items included a 1980 Chevrolet pickup truck, a General Motors engine with an attached four-wheel drive transmission, six other transmissions, and a pickup truck frame, all of which were found scattered about Herndon's property.

Prior to Herndon's trial, the parties agreed to bifurcate the alteration and removal counts from the forfeiture count. However, during proceedings on the alteration and removal counts, the government introduced evidence, without objection, that Herndon possessed the items at issue in the forfeiture count. After the government concluded its case on the alteration and removal counts, the district court suggested, in Herndon's presence, that he stipulate to forfeiture of the items identified in the forfeiture count if the jury should find him guilty of the alteration and removal counts. After conferring with Herndon, his attorney agreed to the stipulation.

On April 3, 1991, the jury found Herndon guilty of both alteration and removal counts. Accordingly, the district court ordered forfeiture of the items listed in the forfeiture count along with the two stolen pickup trucks identified in the alteration and removal counts. On May 29, 1991, the district court sentenced Herndon to five-years imprisonment on the first alteration count under 18 U.S.C. § 511 and fourteen-months imprisonment on the second count under the sentencing guidelines. Herndon is to serve these sentences consecutively with a three-year period of supervised release to follow his imprisonment. Additionally, the district court ordered Herndon to pay partial restitution of $908 to help compensate the owner and insurer of the stolen pickup truck at issue in count one.

## II. SIMILAR ACTS EVIDENCE

During its prosecution of the VIN alteration and removal counts, the government introduced evidence that Herndon possessed the items identified in the forfeiture count. Herndon did not object to the introduction of this similar act evidence at trial. He now argues that the evidence showed only his propensity to engage in illegal conduct and, therefore, the district court erred by allowing its admission. We disagree.

Federal Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court articulated a four-part standard for determining the admissibility of Rule 404(b) evidence. Such evidence is admissible if: 1) the evidence is offered for a proper purpose; 2) the evidence is relevant; 3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and 4) upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. *Id.* at 691–92, 108 S.Ct. at 1502; *cf. United States v. Robinson,* 978 F.2d 1554 (10th Cir.1992).

Herndon argues: 1) the government failed to articulate a proper purpose for which it sought to admit the similar acts evidence; 2) the evidence was irrelevant as lacking probative value because the government did not prove that Herndon altered the VINs on the items identified in the forfeiture count; 3) he suffered unfair prejudice which substantially outweighed any of the similar acts evidence's legitimate probative value; and 4) the district court erred by failing to issue a limiting instruction concerning the use of the evidence.

We preface our review by noting that in order to preserve an alleged error for appeal, a party must object timely and properly. *United States v. Taylor,* 800 F.2d 1012, 1017 (10th Cir.1986), *cert. denied,* 484 U.S. 838, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987). Herndon's failure to do so constitutes waiver of the issue unless there is

le or part shall be subject to seizure and

forfeiture to the United States....

plain error resulting in manifest injustice. *United States v. Mendoza–Salgado,* 964 F.2d 993, 1008 (10th Cir.1992); Fed. R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Consequently, we need not review the district court's compliance with *Huddleston's* requirements with exacting scrutiny.

■ Initially, Herndon correctly notes that the government bears the burden of articulating the precise basis upon which Rule 404(b) evidence is offered, and that the trial court must identify the specific purpose for which such evidence is admitted. *See United States v. Record,* 873 F.2d 1363, 1375 n. 7 (10th Cir.1989); *United States v. Kendall,* 766 F.2d 1426, 1436–37 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986). In *Record,* however, we were careful to add that "any error in failing to adhere to the *Kendall* requirements would be considered harmless if 'the purpose for admitting the other acts testimony is apparent from the record, and the district court's decision to admit was correct.'" *Id.* at 1375 n. 7 (quoting *United States v. Orr,* 864 F.2d 1505, 1511 (10th Cir.1988)); *see also Robinson,* 978 F.2d 1554, *supra.* In *Record* the defendant not only objected at trial, but had earlier filed an unsuccessful motion *in limine.* Here, Herndon did neither. We now make explicit what *Record* impliedly recognized: *Kendall's* requirements apply only in the presence of a timely and proper objection at trial. To hold otherwise would place on the government and the trial court the additional and awkward burden of having to defend the defendant.

■ A cursory examination of the record supports our conclusion that the district court did not commit plain error by allowing the similar acts evidence. First, we are inclined to agree with the government that in a prosecution turning on the identity of the person who altered and removed VINs, evidence that a defendant possessed numerous other items with altered VINs tends to identify him as that person. It is quite unlikely that a person could accumu-

late so many items with altered VINs without somehow being involved in their alteration himself. This is especially true with regard to the pickup truck frame at issue in the forfeiture count. This frame had been stamped in two places with the number 139557. The stolen pickup truck identified in the first alteration count also had the same altered VIN 139557.

■ Herndon's next argument—that the similar acts evidence was irrelevant because the government failed to prove he was the one who altered the VINs on the items identified in the forfeiture count— ignores the language and result in *Huddleston* itself. There, the Supreme Court held that a trial court need not make a preliminary finding that the government proved the existence of the similar act by a preponderance of the evidence before submitting the similar acts evidence to the jury. *Huddleston,* 485 U.S. at 682, 108 S.Ct. at 1497. Rather, Rule 404(b) permits the admission similar acts evidence "if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Id.* at 685, 108 S.Ct. at 1499. While *Huddleston* most directly concerned whether the similar acts occurred, the Court also rejected requiring that a preliminary finding be made as to whether the defendant committed the similar act. *Huddleston,* 485 U.S. at 689 n. 6, 108 S.Ct. at 1501 n. 6. Therefore, we must decide whether there was sufficient evidence to support a finding by the jury that Herndon altered the VINs on the items identified in count three. We believe there was. The evidence at trial clearly demonstrated that the items in count three were found on Herndon's property. Moreover, the government introduced an ammunition box seized from Herndon's front porch containing a number of specialized rivets, stencils, and stamps which could have been used to alter VINs. From this evidence, the jury could easily have inferred that Herndon was the person responsible for altering the VINs on the items in the forfeiture count.

Without elaboration, Herndon next argues that the prejudice resulting from the similar acts evidence substantially out-

weighed its legitimate probative value. However, a trial court has broad discretion to determine whether the prejudice inherent in otherwise relevant evidence substantially outweighed its probative value. *See United States v. Record,* 873 F.2d 1363, 1375 (10th Cir.1989); *United States v. Esch,* 832 F.2d 531, 535 (10th Cir.1987), *cert. denied,* 485 U.S. 908, 991, 108 S.Ct. 1084, 1299, 99 L.Ed.2d 242, 509 (1988). In the absence of an objection by Herndon at trial and more specific allegations on appeal, we choose not to second guess the good judgment of the district court.

■ Finally, Herndon argues that, despite his trial counsel's failure to request one, the district court erred by not issuing a limiting instruction to the jury concerning its use of the similar acts evidence. This argument is without merit. A trial court need only give such an instruction "upon request." *Huddleston,* 485 U.S. at 691–92, 108 S.Ct. at 1502; *Record,* 873 F.2d at 1376. As there was no request, there was no error.

### III. FORFEITURE

■ After the government rested its case against Herndon on the alteration counts, the district court suggested to Herndon's counsel, in open court and with Herndon present, that he stipulate to forfeiture of the items identified in count three in the event the jury returned guilty verdicts on counts one and two. At the district court's suggestion, Herndon's counsel took the opportunity to discuss the stipulation with him, after which Herndon's counsel agreed to the contingent stipulation. The court then asked Herndon's counsel whether his client understood the agreement, and counsel responded affirmatively.

After the jury returned its guilty verdicts against Herndon on counts one and two, the district court ordered forfeiture of the items identified in count three along with the two stolen pickup trucks. The items identified in the forfeiture count included a 1980 Chevrolet pickup truck Herndon had legitimately purchased. This truck, which did not have altered VINs on its body, had an engine and transmission with altered VINs.

Herndon now argues that the district erred by failing to address him directly before accepting the stipulation to ensure that he understood the nature of the accusation, to ascertain that the stipulation was entered into voluntarily, and to establish a factual basis for the forfeiture of the 1980 Chevrolet pickup.[3] According to Herndon, the foregoing concerns are the core principles of Federal Rule of Criminal Procedure 11 which places certain requirements on a court before it can accept a plea of guilty or *nolo contendere* from a defendant.[4] Because Herndon did not object to the stipulation agreement at trial, we review only for plain error.

In support of his argument, Herndon notes the Fourth and Seventh Circuits have held that the Rule 11(f) requirement that a court must satisfy itself of a factual basis for the guilty plea is applicable to a defendant's stipulation to criminal forfeiture. *See United States v. Reckmeyer,* 786 F.2d 1216, 1222 (4th Cir.), *cert. denied,* 479 U.S. 850, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986);

---

3. Herndon admits that there was a factual basis for forfeiting the other items identified in count three. As to the 1980 Chevrolet pickup truck, Herndon also concedes that there was a factual basis for forfeiting its engine and transmission.

4. The three considerations Herndon forwards are based upon several parts of Fed.R.Crim.P. 11:

> (c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

> (1) the nature of the charge....

> (d) **Insuring That the Plea is Voluntary.** The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement.

> (f) **Determining Accuracy of Plea.** Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

*United States v. Roberts,* 749 F.2d 404, 409–10 (7th Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1770, 84 L.Ed.2d 830 (1985). Herndon also cites *United States v. Crumbley,* 872 F.2d 975, 976 (11th Cir. 1989), as authority for "assuming without deciding that Fed.R.Crim.P. 11(f) applies to forfeiture portion of plea agreement." Def. Br. at 22. *Crumbley,* however, has largely been overruled by *United States v. Boatner,* 966 F.2d 1575 (11th Cir.1992), which held:

> [A] forfeiture provision in a Rule 11 agreement is not a plea to a substantive charge, but a sanction to which the parties agree as a result of the defendant's plea. Because Rule 11(f) is applicable only to guilty pleas, we hold that a sentencing judge is not required under Rule 11 to determine whether there is a factual basis for a defendant's concession to a criminal forfeiture pursuant to his plea bargain with the government.

*Id.* at 1581. Additionally, Herndon argues that if we decline his invitation to extend the other courts' rulings to this circuit, we should nevertheless adopt his argument either as required by due process or as an exercise of this court's supervisory power.

The government argues for a literal interpretation of Rule 11. It says that the rule by its own terms applies only to pleas of guilty or *nolo contendere.* It notes that in each of the three cases Herndon cites, the stipulation to forfeiture occurred as part of a guilty plea, and thus fell properly within the scope of Rule 11. The government then cites cases from three other circuits which hold in accordance with *Boatner* that Rule 11 is inapplicable with respect to stipulations admitting facts conclusive of guilt. *See, e.g., United States v. Terrack,* 515 F.2d 558, 560 (9th Cir.1975);[5] *United States v. Robertson,* 698 F.2d 703, 708 (5th Cir.1983); *United States v. Perate,* 719 F.2d 706, 710–11 (4th Cir.1983).

The issue of whether Rule 11 applies to criminal forfeiture proceedings appears to be one of first impression in this Circuit. Neither party has presented us with cases from other circuits which address directly this issue. Herndon's authorities are distinguishable because each of the cases involved a stipulation made in the course of a guilty plea. The government's authorities are also distinguishable, although less so, because in those cases the defendants only stipulated to facts which were conclusive of guilt, rather than waiving any further proceedings as Herndon did.[6]

The stipulation Herndon agreed to does not comport with the Supreme Court's definition of a guilty plea. *See Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–1712, 23 L.Ed.2d 274 (1969) ("A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment.")[7] In Herndon's case, at least one important event remained—the jury's verdict. This was a situation where both parties gambled on the outcome of the trial. Herndon risked his right to have the forfeiture issue tried to a jury on the chance that he would be found not guilty of the alteration counts. The government, on the other hand, chanced its opportunity to receive items that were clearly forfeitable under the statute based on its perception of the strength of the case against Herndon. In

---

**5.** The Ninth Circuit has recently affirmed, *en banc,* the underlying rationale of *Terrack. See Adams v. Peterson,* 968 F.2d 835, 839–41 (9th Cir.1992).

**6.** Herndon argues the difference between his case and a case where the defendant stipulates to guilt-proving facts is that in the latter cases the court is still required to make a finding of guilt and, therefore, the stipulations are not the equivalent of guilty pleas and compliance with Rule 11 is not required. This argument almost proves too much. Herndon, on the one hand, urges us accept his broad definition of the term

"guilty plea" in order to facilitate his argument. On the other hand, he forbids us to believe that a stipulation to guilt-proving facts can be a guilty plea because the trial judge has yet go through the formality of adjudging the defendant guilty.

**7.** *But see id.* 395 U.S. at 242–43 n. 4, 89 S.Ct. at 1712 n. 4 ("'A plea of guilty is more than a voluntary confession made in open court. It also serves as a *stipulation* that no proof by the prosecution need be advanced.... It supplies both evidence and verdict, ending controversy.'") (Citation omitted, emphasis added.)

retrospect, Herndon should have passed on the bet.[8]

■ Another factor militating against the result Herndon seeks is that, as the record indicates, the district court took great care to ensure that Herndon, through his trial counsel, understood the nature of the stipulation. Moreover, Herndon was present in court and represented by counsel during all of the discussions surrounding the stipulation. For all these reasons, as well as the uncertainty of the authority and the absence of an objection from Herndon at trial, we cannot say that the district court's stipulation arrangement constituted plain error or that Herndon was deprived of due process of law.[9] We do note that the better course of conduct for a district court to follow in the future would be to directly address the defendant and ascertain that the stipulation is entered into voluntarily, that the defendant understands the stipulation, and that the stipulation has a factual basis.[10] We choose, however, not to exercise our supervisory power in this regard.

## IV. SENTENCING

Herndon challenges his maximum fourteen-month sentence for count two calculated under the sentencing guidelines.[11] The applicable guideline for violations of 18 U.S.C. § 511 is U.S.S.G. § 2B6.1 which provides a base offense level of eight. This provision continues: "If the retail value of the motor vehicles or parts involved exceeded $2,000, increase the offense level by the corresponding number of levels from the table in section 2F1.1 (Fraud and Deceit)." U.S.S.G. § 2B6.1(b)(1). The fraud table in section 2F1.1(b)(1) provides for the

---

**8.** Herndon also argues that he misunderstood the nature of the stipulation. Indeed, he believes that his counsel, the government, as well as the court all misunderstood the nature of the agreement. In pointing to several colloquies in the record, Herndon states that everyone was operating under the erroneous assumption that the property listed in the forfeiture count was the same the same as that listed in counts one and two. Clearly they were not as is exemplified by Herndon's trial counsel's earlier implied consent to the introduction of the forfeiture count evidence. More plausibly, the district court suggested the stipulation as a way to save Herndon the embarrassment of having to appear again before the very jury that had just convicted him, as well as to mitigate potential costs and prejudice—although the desire to avoid prejudice had been largely obviated by Herndon's lack of objection to the similar acts evidence at trial.

**9.** We similarly reject Herndon's contention that the district court committed plain error by ordering forfeiture of the legitimately purchased pickup truck even though only its engine and transmission had altered VINs. Herndon makes a sensible argument that 18 U.S.C. § 512 by its terms allows forfeiture only of "such vehicle or part" with an altered VIN. Moreover, "[f]orfeitures are not favored; they should be enforced only when within both the letter and spirit of the law." *United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939); *see also United States v. One 1977 Cadillac Coupe DeVille VIN: 6D47S7Q234771*, 644 F.2d 500, 501 (5th Cir.1981) ("As a general rule, forfeiture is not favored, and statutes providing for forfeiture are strictly construed.")

The government counters that Herndon completely changed the character of the legitimately purchased pickup truck when he added the altered engine and transmission. While this argument has some appeal, it does seem at variance with the language of the statute. Courts rely heavily on the text of a forfeiture statute in determining its scope. *See, e.g., Ivers v. United States*, 581 F.2d 1362, 1373–74 (9th Cir.1978) (language of Currency and Foreign Transactions Reporting Act allowing forfeiture of unreported currency in excess of $5,000 is not limited to the excess over $5,000). However, even if we disagree with the district court's approach in this case, and we note that the call is a close one, we cannot say that the district court committed plain error.

**10.** This has been the approach taken by several other courts of appeal which, in fairly strong language, have "suggested" that courts directly address the defendant before accepting a stipulation to guilt-proving facts. *See, e.g., Witherspoon v. United States*, 633 F.2d 1247 (6th Cir. 1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981); *United States v. Brown*, 428 F.2d 1100 (D.C.Cir.1970); *United States v. Miller*, 588 F.2d 1256, 1263–64 (9th Cir.1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979).

**11.** Herndon committed the offenses charged in count one prior to the effective date of the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991 *et seq.* Therefore, when the district court sentenced Herndon to five-year's imprisonment for count one, it relied upon the sentencing parameters provided by 18 U.S.C. § 511.

addition of two points to the base offense level when the loss involved exceeds $5,000, and for the addition of three points if the loss exceeds $10,000.

At the sentencing hearing, the district court, without objection from Herndon's trial counsel, adopted the facts of the presentence report. This report recommended a calculated guideline offense level of eleven. It reached this conclusion beginning with the base offense level of eight, and then increasing this number by three because the presentence report's estimated retail value of the stolen pickup truck identified in count two ($10,000) when added to the estimated retail value of the items listed in the forfeiture count ($2,750), exceeded $10,000. It is apparent from the presentence report that the estimated value of the pickup truck was calculated at the time of its theft.

■ Herndon now argues that the district court erred in basing the guideline offense level on the value of the pickup truck at the time it was stolen rather than its value at the time he altered its VIN. The indictment alleged that the stolen pickup truck's VIN was removed and altered some four years after its theft. Because Herndon failed to object to the calculation of the offense level at his sentencing hearing, we review only for plain error. Fed. R.Crim.P. 52(b); *United States v. Smith,* 919 F.2d 123, 124 (10th Cir.1990). However, basing a sentence on the wrong guideline range constitutes a fundamental error affecting substantial rights within the meaning of Rule 52(b). *United States v. Lacey,* 969 F.2d 926, 930 (10th Cir.1992); *Smith,* 919 F.2d at 124. We review the district court's findings of fact under a clearly erroneous standard. *United States v. Hollis,* 971 F.2d 1441, 1458 (10th Cir. 1992); *United States v. Haar,* 931 F.2d 1368, 1377 (10th Cir.1991).

■ The gist of Herndon's argument is that the district court erred by using the value of the pickup truck at the time of its theft because he was neither charged with nor convicted of stealing the pickup truck. Herndon argues that the district court should have valued the pickup truck four years later, at the time he altered its VIN. In his brief, Herndon points out that according to one automobile pricing guide, the most the stolen truck could have been worth at the time he removed and altered its VIN was $6,600. This amount, when coupled with the $2750 worth of items identified in the forfeiture count, would yield a total value of only $9350, and thus produce a total offense level of ten rather than eleven.

The government argues in response that U.S.S.G. § 2B6.1 relies on the fraud and deceit table in section 2F1.1 for calculating offense levels where more than $2,000 in motor vehicles and/or parts is involved. That provision, the government continues, differs from section 2B6.1 in that it calculates offense levels according to "loss" rather than "retail value." Moreover, Application Note 7 to section 2F1.1 references the commentary to U.S.S.G. § 2B1.1 (Larceny, Embezzlement and Other Forms of Theft). This commentary tends to indicate that "loss" means the fair market value of the property at the time of its theft. *See, e.g.,* U.S.S.G. § 2B1.1 (Application Note 2). The government then concludes that because the result of Herndon's conduct was to conceal the true identity of the stolen pickup truck from its original owner, he should be punished for the loss accruing from the theft of the truck.

While neither side has provided us with any authority on this particular issue, both Herndon and the government present plausible arguments in support of their differing interpretations of section 2B6.1. In this interesting issue of first impression in our Circuit, we look initially to the text of the provisions involved. It should be noted at the outset that while section 2B6.1 talks in terms of retail value, it offers no guidance as to what point in time retail value should be calculated. For that matter, the provision offers no guidance whatsoever that would help a sentencing court determine the true value of the property involved. We infer from this lack of specificity that the Sentencing Commission intended to leave subtle questions of valuation to the sound discretion of the sentencing

court. The problem in Herndon's case is that because he failed to object to the district court's adoption of the presentence report, there is nothing apart from the report itself from which we can review the basis for Herndon's sentence.

Herndon impliedly argues that because section 2B6.1 talks in terms of the motor vehicles or parts "involved," value should be determined at the time of VIN alteration or removal. The word "involved," however, provides a slim basis for such a construction, and could conceivably support a contrary interpretation. The government, on the other hand, focuses almost entirely on the fraud and deceit table of section 2F1.1 for its argument that loss to the victim should control. This emphasis is somewhat misplaced. The guideline which determines the sentence for violations of 18 U.S.C. § 511 is section 2B6.1. Simply because the provision refers to the fraud table for enhancement of certain section 511 violations does not mean that in those cases section 2B6.1 loses its relevance, or even its primacy.

The parties' arguments illustrate how difficult it can be to settle on one method of calculating valuation or loss in the absence of specific guidance. Indeed, the commentary to the fraud and deceit table provides:

> [L]oss need not be determined with precision. The court need only make a reasonable estimate of loss, given the available information. This estimate, for example, may be based on the approximate number of victims and an estimate of the average loss to each victim, or on more general factors, such as the nature and duration of the fraud and the revenues generated by similar operations. The offender's gain from committing the fraud

is an alternative estimate that ordinarily will underestimate the loss.

U.S.S.G. § 2F1.1 (Application Note 8). Moreover, having only one possible way to calculate value or loss could work ruinous results depending on the facts of a given case. The equities can run both ways, and for this reason, the district court necessarily retains discretion in determining value and loss.[12]

In short, we reject Herndon's contention that when sentencing for violations of 18 U.S.C. § 511, section 2B6.1 requires a court to value motor vehicles or parts involved at the time the offense was committed. In doing so, we are not saying that in future cases we will refuse to reverse where the valuation was computed at some time other than when the VIN was tampered with. We only say that in this case we have not been provided with a sufficient basis for holding the district court committed plain error in valuing the pickup truck at the time it was stolen.

## V. RESTITUTION

■ Herndon objects for the first time that the district court's order of restitution exceeded its statutory authority. As discussed above, issues generally will not be considered for the first time on appeal. Again, we review only for plain error. The imposition of an illegal restitution order, however, constitutes plain error. *United States v. Wainwright*, 938 F.2d 1096, 1098 (10th Cir.1991). While we review *de novo* the legality of a sentence of restitution, the district court's findings of fact will not be disturbed unless clearly erroneous. *United States v. Teehee*, 893 F.2d 271, 274 (10th Cir.1990). Moreover, the amount of restitution is reviewed for abuse of discretion. *United States v. Rogat*, 924 F.2d 983, 985

---

12. The Fifth Circuit has recently addressed the interplay between sections 2B6.1 and 2F1.1 in the context of a defendant convicted of altering VINs and trafficking in motor vehicles with altered VINs. *See United States v. Thomas*, 973 F.2d 1152, 1158–59 (5th Cir.1992). While the distinction between *Thomas* and this case—the additional trafficking convictions—is significant, the court's reasoning is nevertheless instructive. In upholding the defendant's sentence, the *Thomas* court rejected the argument

that enhancement of section 2B6.1 offenses through the fraud and deceit table of section 2F1.1 is limited to retail value. As the court noted: "Nowhere in sections 2B6.1 or 2F1.1, or their Commentary, does it mention using *only* retail value in applying the loss table in section 2F1.1. *Thomas*, 973 F.2d at 1159 (emphasis in original). Thus, the Fifth Circuit recognized, as we do here, that the guidelines in this context do not speak in terms of absolutes.

(10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991).

 The district court ordered Herndon to pay a total of $908 in restitution, $190 to the owner (Steven Ratcliff) and $718 to the insurer (Farmers Insurance Group) of the stolen 1985 GMC Sierra pickup truck identified in the first alteration count. The district court indicated that this amount would compensate them for only part of their loss.[13] From the record, we gather that the district court ordered restitution for the loss suffered by the victims resulting from the theft of the truck. Herndon, invoking the Supreme Court's recent decision in *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), argues that the district court should have ordered him to pay only the loss caused by his conduct that formed the basis for his conviction, namely, the physical damage caused by the alteration of the stolen pickup truck's VIN.

*Hughey* involved an interpretation of the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663. The district court in this case, however, could have based its restitution order on either the VWPA or the Federal Probation Act ("FPA"), 18 U.S.C. § 3651, *repealed by* Pub.L. No. 98–473. The FPA applies to offenses committed before November 1, 1987. Although Herndon committed count one before this date, the district court did not specify which of the two statutes it used. We will assume the district court ordered restitution under the VWPA, and Herndon's reliance on *Hughey* is well-placed to this extent. *United States v. Cook,* 952 F.2d 1262, 1264 (10th Cir.1991).

The VWPA allows the district court to sentence a defendant to pay restitution to "any victim of such offense." 18 U.S.C. § 3663(a)(1). In *Hughey,* the Court held that the VWPA "authorize[s] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." 495 U.S. at 413,

110 S.Ct. at 1980. The question posed by this issue is the loss actually caused by Herndon's conduct.

This question would seem to be a factual one for the district court. The presentence report, the district court, and presumably the attorneys below all assumed that the damage resulting from Herndon's VIN alteration was the total value of the truck. According to a recent Tenth Circuit case, however, everyone may have jumped to a mistaken conclusion. In *United States v. Diamond,* 969 F.2d 961 (10th Cir.1992), we held that the government bears the burden of demonstrating that a defendant's conduct resulted in a loss that would not have otherwise occurred.

In *Diamond,* the defendant pled guilty to filing false financial reports with the Small Business Association (SBA). Diamond had engaged in some very questionable business practices which eventually led to the insolvency of his business. By filing false reports with the SBA, he was able to hide his financial problems from the agency, and delay the SBA from calling in loans he had obtained legitimately from them. The SBA lost quite a bit of money as a result of Diamond's actions, and the district court had ordered him to pay for the SBA's entire loss.

We held this to be error because the government failed to differentiate between losses caused by the false reports and losses caused by bad business practices. Only the former losses were compensable under the VWPA and *Hughey.* The court reasoned that the specific conduct of the offense was the filing of false reports, and the government could not recover for losses which would have occurred despite the reliance on the false reports. The government had to prove that the SBA lost money as a result of the false reports. *Diamond,* 969 F.2d at 967. Without any such proof, the district court's restitution order was clearly erroneous.[14]

---

**13.** The district court is incorrect in this assertion with respect to Ratcliff. According to the presentence report, he reported a total loss of $190 ($100 for an insurance deductible and $90

in car rental costs), and thus appears to have been awarded full restitution.

**14.** The Sixth Circuit has recently interpreted *Hughey* and the VWPA in a similar fashion. *See*

By the same token, in Herndon's case the government offered no evidence, only an assertion, that the alteration of the VINs caused the loss of the full value of the truck. The government argues that Herndon's act of alteration concealed the true identity of the vehicles, preventing their recovery by the rightful owners. However, as in *Diamond*, the government offered nothing more to link the VIN alterations to the loss of the full value of the stolen pickup truck. The damage suffered by the victims here, insurance payouts and loss of the use of the stolen pickup truck over time, could have occurred regardless of whether Herndon altered its VIN. Because the government offered nothing to the contrary, the district court's restitution order, like the one in *Diamond*, was plainly erroneous.[15]

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM Herndon's conviction, VACATE the district court's order of restitution, and REMAND the cause with instructions for the district court to recalculate restitution in light of *Hughey v. United States* and *United States v. Diamond.*

*United States v. Jewett,* 978 F.2d 248, 250–252 (6th Cir.1992).

**15.** By this holding we do not mean to imply that the loss caused by Herndon's conduct is limited to only the physical damage resulting from the VIN alterations. As discussed in the sentencing context, and as exemplified by our deferential review regarding the amount of restitution, the district court necessarily retains discretion in calculating loss and value. We merely hold that the government failed to meet its burden below of proving the loss attributable to Herndon's conduct.