16 F.3d 418
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Virginia Lee TERNES, Defendant-Appellant.
 No. 93-5065.
 United States Court of Appeals, Tenth Circuit.
 Dec. 22, 1993.
 
 Before SEYMOUR, ANDERSON and EBEL, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 ANDERSON
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Virginia Lee Ternes appeals her conviction on charges of conspiracy to possess an unregistered firearm, in violation of 18 U.S.C. 371, and attempting to influence a witness, in violation of 18 U.S.C. 1512(b)(1), and she also appeals her sentence. She seeks to reverse her conviction alleging that the district court violated her constitutional right to confrontation and otherwise erred in various evidentiary rulings. In the alternative, she seeks resentencing alleging that the United States Sentencing Guidelines were misapplied in calculating her base offense level and her criminal history category. We exercise jurisdiction under 28 U.S.C. 1291 and affirm.
 
 BACKGROUND
 
 3
 Ms. Ternes and her husband, Leonard James Ternes ("Red"), were indicted for conspiracy to possess an unregistered, sawed-off, shotgun. She was indicted alone for attempting to influence the grand jury testimony of her stepdaughter, Peggy Pearman. Ms. Ternes was tried separately for these crimes and convicted.
 
 
 4
 Pearman was the government's principal witness. She lived with Ms. Ternes and Red in Kansas City, Missouri during the time period relevant to these offenses, late 1991 through early 1992. Pearman testified that in late 1991, Red decided to purchase a shotgun. He, Ms. Ternes, and Pearman telephoned various pawn shops until Red found the gun he wanted, a 16-gauge shotgun. Red wanted Pearman to make the purchase for him so he gave her some money, and he and Ms. Ternes instructed Pearman to use a false address when buying the gun. The reason they told her to use a false address, according to Pearman, was so that "[i]f police found the gun ... it wouldn't be connected back to [their address], and it wouldn't be connected back to them."
 
 
 5
 Following instructions, Pearman purchased the shotgun on December 13, 1991, using an address other than the Terneses'. She returned to the Terneses' house and gave the gun to Red. Later that day, she watched Red saw off the barrel of the shotgun inside their home.
 
 
 6
 The next month, in mid-January of 1992, Pearman decided to report the Terneses to the police. She called the Kansas City Police and reported that the Terneses had a sawed-off shotgun and that they were planning to leave town, supposedly to rob a bank. On January 16, police conducting surveillance of the Terneses' house observed the Terneses preparing to leave. Police saw Red place an object about the size of the shotgun--it was wrapped in something--into the car. The Terneses were followed east on Interstate 70 for approximately 40 miles before surveillance was terminated.
 
 
 7
 The shotgun was discovered by police two months later, in March of 1992, outside Ms. Ternes's mother's home in Oklahoma. During the interim from January to March, the Terneses had moved in with Ms. Ternes's mother, Ms. Pancake. The gun was discovered behind Ms. Pancake's trailer home, near a storage shed, wrapped in a shirt, and covered with leaves and other debris.
 
 
 8
 Pearman was subpoenaed to appear before a grand jury in connection with the shotgun. Assisting the FBI prior to her appearance, she obtained tape recording equipment and recorded three telephone calls that she placed to her stepmother, Ms. Ternes. In the course of their conversations, Ms. Ternes firmly instructed Pearman to tell the grand jury a story about the shotgun that would exculpate the Terneses from possessing the gun. Ms. Ternes also told Pearman over the telephone that she did not think police would be able to find fingerprints on the shotgun because it had been outside for an extended period of time. These tape recordings were admitted into evidence and played for the jury. Ms. Ternes was convicted on both charges.
 
 DISCUSSION
 I.
 
 9
 Ms. Ternes's trial counsel, Mr. Byars, sought to impeach Pearman's testimony by showing that (1) Pearman faced similar criminal charges as Ms. Ternes and was motivated by an agreement with the government to testify in exchange for leniency, and (2) Pearman had a "falling out" with Ms. Ternes after the shotgun was purchased and, as a result, was biased by anger, resentment, and a desire to "get even." His attempts to elicit testimony in these two areas from Pearman and other witnesses were interrupted several times by sustained objections to his questions or, in one instance, the witness's answer. Ms. Ternes challenges these rulings.
 
 
 10
 She first contends that the district court prevented an effective cross-examination of Pearman, in violation of her Sixth Amendment right to confrontation. We review this claim de novo. Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir.), cert. denied, 113 S.Ct. 347 (1992). Generally, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986) (emphasis added); United States v. DeSoto, 950 F.2d 626, 629 (10th Cir.1991). The Confrontation Clause "guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985); United States v. Tome, 3 F.3d 342, 352 (10th Cir.1993).
 
 
 11
 Mr. Byars asked Pearman, "[H]ave you ever been indicted or put in jail for your purposes for this particular crime?" The prosecutor objected, and the district court sustained the objection, saying "Mr. Byars, you surely know that's an improper question to ask." Mr. Byars withdrew the question. R. Vol. III at 98. He did not make an offer of proof, and he did not inquire further about any deal between Pearman and the prosecution.
 
 
 12
 With new counsel on appeal, Ms. Ternes asserts that Mr. Byars's question was not improper and that by disallowing it the district court effectively "prohibited all inquiry" into Pearman's bias and motive for testifying, violating her right to confrontation. Appellant's Opening Brief, at 9. This claim is meritless. Mr. Byars withdrew the question, leaving nothing for us to review. Even if the question had not been withdrawn, we would find no error in the district court's ruling sustaining the objection. See Fed.R.Evid. 403. Furthermore, there is no ruling or statement in the record by the district court that constitutes a "complete prohibition of inquiry" into Pearman's bias and motives for testifying. The district court sustained an objection to a specific question, but did not foreclose the line of inquiry. Thus, Ms. Ternes was not deprived of the opportunity for an effective cross-examination.
 
 
 13
 Ms. Ternes also argues that the district court erred in sustaining several other objections to questions and testimony pertaining to Pearman's possible bias. We generally review the admission or exclusion of evidence for abuse of discretion. United States v. Oles, 994 F.2d 1519, 1522 (10th Cir.1993).
 
 
 14
 The district court sustained objections to the following: (1) Mr. Byars's attempts to ask Ms. Ternes's son, Donnie Reed, "[W]as [Pearman] mad at your mother [Ms. Ternes]?" and "What was [Pearman's] attitude towards [Ms. Ternes]?" R. Vol. IV at 188, (2) Donnie Reed's statement, "My mom kicked [Pearman] out for doing drugs," which he included in his answer to a question asking him when Pearman had left the Terneses' home, id. at 190, and (3) Mr. Byars's attempts to ask Catherine Standfield whether Pearman had told her she was angry at Ms. Ternes. Id. at 199-200.
 
 
 15
 Having reviewed the record and Ms. Ternes's contentions, we find no instances where the district court abused its discretion. We agree with her assertion that the Federal Rules of Evidence permit the use of extrinsic evidence to show a witness's bias. See United States v. Abel, 469 U.S. 45, 52 (1984). This does not mean, however, that a judge lacks the discretion to exclude extrinsic evidence of bias when it is sought in an impermissible manner or when it is unduly prejudicial under Rule 403. See id.
 
 
 16
 Although, unfortunately, the grounds for the government's objections and the district court's rulings were frequently left unsaid in this case, we find there to have been sufficient grounds under the Federal Rules of Evidence for each of the rulings described above. Mr. Byars's questions to Mr. Reed, asking for his impressions of whether Pearman was mad at his mother (Ms. Ternes) at a particular time, came before an adequate foundation had been laid ensuring that Mr. Reed's opinions would be "rationally based on [his] perception...." See Fed.R.Evid. 701. Mr. Reed's statement that Pearman was kicked out "for doing drugs" was both nonresponsive to the question asked and may have been considered unduly prejudicial under Rule 403. And, by his own admission, the question that Mr. Byars wanted to ask Ms. Standfield was objectionable because of its form, even though its content may have been permissible.
 
 
 17
 The district court's rulings were only to specific questions or answers that, for one reason or another, were objectionable. The district court did not foreclose any permissible avenues of inquiry, only impermissible questions. Moreover, Mr. Byars did not make offers of proof in response to these objections and he did not seek out or challenge the grounds for these objections or rulings. We find the district court to have acted within its sound discretion.
 
 II.
 
 18
 Ms. Ternes also protests the repeated references to "bank robbery" in her indictment, which was read to the jury, and by the government's witnesses at trial. The indictment states and witnesses testified that she and her husband, Red, were planning to use the sawed-off shotgun in a bank robbery. Ms. Ternes contends that it was unnecessary to prove anything about bank robbery in order to prove their conspiracy to possess the shotgun, and that therefore all references to bank robbery were irrelevant and admitted in violation of Federal Rules of Evidence 404(b) and 403.
 
 
 19
 She concedes that her trial counsel did not object to any of the references to bank robbery now challenged on appeal. As a result, these claims have been forfeited and we review only at our discretion and only for plain error. Fed.R.Crim.P. 52(b); United States v. Thody, 978 F.2d 625, 631 (10th Cir.1992). We will correct a forfeited error only if it is "plain," if it affected "substantial rights" of the defendant, and if it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 113 S.Ct. 1770, 1779 (1993) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).
 
 
 20
 Ms. Ternes was neither formally nor informally accused of actually having committed a bank robbery. The references at trial to the Terneses' planned bank robbery were introduced only as evidence of an "object" of their conspiracy to possess the shotgun. Proof of a planned bank robbery was proof of a motive for the conspiracy, and references to bank robbery were therefore not excludable under Fed.R.Evid. 404(b). And whether to exclude the references under Fed.R.Evid. 403 as unduly prejudicial was a decision within the sound discretion of the district court. Thus, we find no error, let alone "plain error," in the references at trial to a planned bank robbery.
 
 III.
 
 21
 Ms. Ternes also contends that she was sentenced incorrectly under the United States Sentencing Guidelines. She received a sentence of 78 months imprisonment, plus two years supervised release and a $1,500 fine. She argues that the district court erred in (1) increasing her base offense level by four levels under U.S.S.G. 2K2.1(b)(5),[2] and in (2) including prior misdemeanor animal ordinance violations under U.S.S.G. 4A1.2(c)(1) in computing her criminal history.[3]
 
 
 22
 Because she did not object to this sentence or her presentence report adopted by the district court, we review her sentence only for plain error. Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); United States v. Herndon, 982 F.2d 1411, 1419 (10th Cir.1992); United States v. Saucedo, 950 F.2d 1508, 1511 (10th Cir.1991). It is well settled that a sentence based on the wrong guideline range is of sufficient magnitude to constitute an error "affecting substantial rights" of the defendant. Herndon, 982 F.2d at 1419; United States v. Smith, 919 F.2d 123, 124 (10th Cir.1990).
 
 
 23
 As to her first contention, the district court adopted the presentence report's finding that Ms. Ternes "possessed or transferred [the shotgun] with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense," and accordingly increased her base offense level by four. U.S.S.G. 2K2.1(b)(5). Ms. Ternes contends that because no felony was actually committed using the shotgun, the application of section 2K2.1(b)(5) was erroneous. The guideline does not require, however, that a felony actually have been committed with the firearm in question. It only requires the district court to find that the defendant possessed the gun with knowledge, intent, or reason to believe that it would be so used. U.S.S.G. 2K2.1(b)(5). The district court's finding was sufficient under the relevant guideline, it was supported by facts to which Ms. Ternes did not object, and therefore it will not be disturbed.
 
 
 24
 Ms. Ternes's second contention also fails. In computing a defendant's criminal history, the guidelines instruct the sentencing court to count "local ordinance violations" for which "the sentence was a term of probation of at least one year." U.S.S.G. 4A1.2(c)(1). According to the presentence report, Ms. Ternes received one year probation and a fine in Kansas City Municipal Court for each of two animal ordinance violations (case numbers G744296 and G744297). Thus, one point was added to her criminal history score for these related offenses, pursuant to section 4A1.2(c)(1).
 
 
 25
 She contends, however, that animal ordinance violations should not have counted against her because they are "similar" to the offenses listed in section 4A1.2(c)(2), which states:
 
 
 26
 Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted: Hitchhiking, Juvenile status offenses and truancy, Loitering, Minor traffic infractions (e.g., speeding), Public intoxication, Vagrancy.
 
 
 27
 U.S.S.G. 4A1.2(c)(2) (emphasis added).
 
 
 28
 As stated above, we are reviewing only for plain error. Plain error must, of course, be "plain," which means "clear," or "obvious." Olano, 113 S.Ct. at 1777. In this case, Ms. Ternes's argument that animal ordinance violations should always be excluded under subsection (c)(2) touches upon an unsettled area of the law in our circuit, and elsewhere.[4] Therefore, if the district court's interpretation of section 4A1.2(c) was permissible, even if it was not the only permissible interpretation, we will not reverse it as plain error. See Herndon, 982 F.2d at 1419-20.
 
 
 29
 The district court's application of section 4A1.2(c) in this case, which increased Ms. Ternes's minimum guideline sentence by eight months on the basis of misdemeanor animal ordinance violations, was clearly permissible. Looking at the text of section 4A1.2(c), Ms. Ternes's animal ordinance violations met the requirements of subsection (c)(1) (a local ordinance violation and a sentence of at least one year's probation), and animal ordinance violations are not specifically listed in (c)(2) as offenses that are "never counted." We have been cited no commentary or binding case law, see supra note 3, to convince us that the district court was wrong in its application of section 4A1.2(c). We therefore find that the district court did not commit plain error, and we reserve the question of interpreting section 4A1.2(c) to another day and to a case in which the question has been properly preserved for appeal.
 
 
 30
 The record is inadequate, in any event, for us to engage in a meaningful comparison of Ms. Ternes's animal ordinance violations to the offenses listed in section 4A1.2(c)(2) (i.e., hitchhiking, loitering, minor traffic infractions, etc.). The presentence report does not cite the specific ordinances she violated and does not describe the nature of her violations. She states in her brief that the violations were for dog-at-large and no dog tags, respectively, but the record on appeal, to which we are bound, is silent.
 
 IV.
 
 31
 Apparently anticipating the result above, Ms. Ternes asserts that the failure to object at sentencing to the inclusion of the animal ordinance violations in her criminal history score rendered her trial counsel constitutionally ineffective. We find the record sufficient "to enable a fair evaluation of the ineffectiveness claim on direct appeal," Beaulieu v. United States, 930 F.2d 805, 807 (10th Cir.1991), and we reject this contention.
 
 
 32
 In order to establish ineffective assistance of counsel, Ternes must show (1) that her counsel's performance was deficient in light of prevailing professional norms, Strickland v. Washington, 466 U.S. 668, 687 (1984), and (2) that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; cf. Lockhart v. Fretwell, 113 S.Ct. 838, 842-43 (1993) (emphasizing that prejudice also requires that errors produced an unfair or unreliable proceeding). In evaluating counsel's performance there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 687.
 
 
 33
 Even though Mr. Byars's failure to make an objection to the animal ordinances may have prejudiced Ms. Ternes by forfeiting her right to a de novo review of the legal issue, which may have been resolved in her favor (or may not), we hold that this failure did not take Mr. Byars's assistance outside the wide range of reasonable assistance. As we noted above, the law is unsettled in this circuit and elsewhere with respect to the scope of unlisted offenses that fall under section 4A1.2(c)(2) on the basis that they are "similar" to a listed offense, or similar in nature to all of the listed offenses. We hold that it is not constitutionally ineffective for counsel to fail to make an objection based on a question of law as unsettled as the question in this case, and we therefore reject this contention.
 
 
 34
 Ms. Ternes's two other allegations of ineffective assistance of counsel are conclusional, buried in footnotes, and are equally meritless in light of our reasoning rejecting her claims in this appeal.
 
 CONCLUSION
 
 35
 As we find no error below, Ms. Ternes's conviction and sentence are AFFIRMED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 From a base offense level of 20 for her conspiracy conviction, Ms. Ternes received a two-level increase for obstruction of justice, which she does not challenge. The four-level increase she contests increased her sentencing range from 51-63 months to 78-97 months
 
 
 [3]
 She was assessed one criminal history point for two prior violations of Kansas City, Missouri, animal ordinances. This point raised her criminal history category from II to III and her resulting guideline range from 70-87 months to 78-97 months
 
 
 [4]
 Our circuit has not discussed how district courts should determine whether an unlisted offense is "similar" to an offense listed in section 4A1.2(c). Cf. United States v. Cox, 934 F.2d 1114, 1124 (10th Cir.1991) (little analysis needed to hold that misdemeanor "menacing" as defined in Colorado is neither a "minor traffic infraction" nor "disorderly conduct"). The circuits that have addressed the appropriate method for analyzing the similarity of listed and unlisted offenses under section 4A1.2(c) have reached widely varying conclusions. Compare United States v. Hardeman, 933 F.2d 278, 281 (5th Cir.1991) (suggests "common sense" approach, relying on "all possible factors of similarity, including a comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct") with United States v. Unger, 915 F.2d 759, 762-63 & n.5 (1st Cir.1990) (court should simply compare the elements of the listed and unlisted offense to see if they are similar, notwithstanding their different names), cert. denied, 498 U.S. 1104 (1991), with United States v. Martinez, 905 F.2d 251, 253 (9th Cir.1990) (court should examine the level of culpability involved in the offenses being compared and the degree to which the unlisted offense indicates a likelihood of recurring criminal conduct)