61 F.3d 917
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
William R. TALBERT, Defendant-Appellant.
 No. 94-1083.
 United States Court of Appeals, Tenth Circuit.
 July 28, 1995.
 
 Before BALDOCK, SETH, and KELLY, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 This is an appeal following the conviction by jury of Defendant William R. Talbert for willfully converting grain pledged as collateral for loans Talbert received in 1986 from the United States Agricultural Stabilization and Conservation Service ("ASCS"). Talbert was convicted of two counts in violation of 15 U.S.C. 714m(c), and sentenced to fifteen months' imprisonment to be followed by three years of supervised release. In addition, he was ordered to pay $125,838.10 in restitution.
 
 
 3
 On appeal, Talbert alleges that there was insufficient evidence to convict him of willfully converting the 1986 wheat and barley crops mortgaged to the ASCS. He further challenges the admissibility of certain items of evidence and the district court's order of restitution. Sufficiency of the evidence is a question of law reviewed de novo. United States v. Grimes, 967 F.2d 1468, 1472 (10th Cir.). The evidence is sufficient to support Talbert's conviction "if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." Id. (quoting United States v. Hooks, 780 F.2d 1526, 1531 (10th Cir.)). We review evidentiary rulings for abuse of discretion. United States v. Rackley, 986 F.2d 1357, 1362 (10th Cir.). Review of a district court's order of restitution is de novo. United States v. Harris, 7 F.3d 1537, 1539 (10th Cir.).
 
 
 4
 William Talbert was the controlling operator of Sangre de Cristo Farms from 1985 until 1989. Sangre de Cristo is a grain and potato farm in the San Luis Valley in Southern Colorado. In 1986, Talbert obtained two commodity loans which totaled approximately $228,881.54. The farm's 1986 grain crop was mortgaged to secure the loans. The loans were to then be repaid with funds obtained from sale of the collateralized grain, which could be sold with written permission from ASCS. Permission was obtained and the grain was sold, yet the loans were not repaid. Talbert was indicted in July 1993 and charged with four counts of violating 15 U.S.C. 714m(c), which makes it a crime to "willfully ... convert ... any property owned or held by, or mortgaged or pledged to, the [Commodity Credit] Corporation." Although the jury found Talbert not guilty on the latter two counts of the indictment, it convicted him on counts related to the 1986 loans from ASCS.
 
 
 5
 In arguing that the evidence was insufficient to convict him under 15 U.S.C. 714m(c), Talbert contends that the reason the loans were not repaid was not "willful" conversion on his part, but rather confusion regarding the need to repay the loans with the grain funds caused primarily by his farm manager, Bill Koozer. Talbert asserts that this confusion arose in large part because he was out of state with his harvesting crew when Koozer sent checks derived from the sale of the grain to Talbert's bookkeeper. Talbert states that the funds were not identified as proceeds from the grain sales, and that the bookkeeper was not aware of the need to repay the loans. Thus, Talbert argues that he was not personally aware of the proceeds and the lack of repayment regarding the loans and consequently could not have "willfully" converted the funds. The problem with Talbert's theory, which was also offered at trial, is that there was ample evidence presented to the jury that he did indeed know of the sale of the grain and need to repay ASCS, yet chose not to repay the loans. The question before us, as mentioned above, is whether that evidence, taken in the light most favorable to the government, could allow a reasonable jury to find Talbert guilty beyond a reasonable doubt.
 
 
 6
 The loans at issue became due in 1988. In July of that year Mr. Koozer obtained permission from the ASCS to sell the mortgaged grain, which was done throughout the summer and fall of 1988. The grain was transported by another business of Talbert's, Talbert Farms. By the fall of 1988 enough grain had been sold to repay most of the ASCS loans, but only $10,000 had in fact been paid on the ASCS loans. Further, evidence was presented regarding personal indebtedness of Talbert. It appears that Talbert paid off a personal line of credit with a portion of the proceeds of the original loan checks, and had objected strenuously to the inclusion of a prior lienholder as a joint payee of those loan checks.
 
 
 7
 Mr. Koozer's testimony indicated that he became very concerned that the proceeds of the sale were not being used to repay the loans. Mr. Koozer communicated his concerns to Talbert, but no additional payments were made. Finally, after meetings with Talbert and his attorney, Matthew DePetro, Mr. Koozer decided to hold incoming checks rather than send them to Talbert's Littleton, Colorado offices as instructed. The record reflects that he then paid approximately $77,000 directly to the ASCS in December 1988. Eight days later, he was fired.
 
 
 8
 ASCS became concerned about the status of the collateralized grain, and on January 18, 1989 announced to Talbert's bookkeeper that an inspection of the grain would be conducted. DePetro informed the ASCS that it would not be allowed on the farm. The ASCS then notified all potential grain purchasers and alerted them that purchases of grain from Sangre de Cristo Farms must be made by check jointly payable to the farm and ASCS. As it turned out, a check had been issued the previous day by one of the contacted purchasers to Sangre de Cristo Farms in the approximate amount of $65,000. ASCS requested that the grain purchaser have the check stopped. When informed of this request, Talbert's attorney, DePetro, with Talbert present, instructed the farm bookkeeper to cash the check and have it converted into certified funds the following morning as the bank opened. This was done before the stop order went through, and again no payments on the loans were made.
 
 
 9
 Six days later, an inspection was conducted at the farm with Talbert present. Testimony was offered that at that inspection Talbert initially stated that he did not remember ever signing loan documents and that he had no knowledge of the $65,000 check mentioned above. At the inspection, it was determined that grain was present in storage bins labeled as containing collateralized grain. Talbert requested and received permission to market the grain, and signed the marketing authorization which established that the grain was mortgaged to ASCS. Subsequently, the grain was sold, yet only one payment was made to ASCS. Further, testimony was presented that Talbert refused to sell grain to a buyer who stated that his check must be made jointly payable to the lienholder. On March 23, 1989 ASCS conducted its final inspection and found that the storage bins were empty.
 
 
 10
 Guided by the standard of review set forth above, we have no difficulty concluding that on this evidence a reasonable jury could find that Talbert willfully converted the grain mortgaged to ASCS to secure the 1986 loans. Contrary to Talbert's assertions to this court, his actions provide significant inference of criminal activity. The evidence upon which the jury apparently relied is sufficient to justify the jury's conclusions.
 
 
 11
 Talbert additionally argues with regard to the sufficiency of his conviction that the government failed to charge him with willfully causing the grain to be converted. See 18 U.S.C. 2(b). He apparently contends that because he was in the fields and not receiving and depositing checks, the only theory on which he could be convicted is that he caused others to willfully convert the collateralized grain. This argument is meritless. There was testimony presented by Talbert's bookkeepers, banker, farm office workers, and Mr. Koozer that Talbert made all financial decisions and exercised control over all financial aspects of the farm. The conversion of the grain was not established when Mr. Koozer forwarded the checks, as instructed, to Talbert's Littleton business address, or even when the funds were deposited in the operating account. Conversion occurred when no check was issued from that account to repay the loans. Considering the compelling evidence presented that Talbert exclusively handled the finances of Sangre de Cristo Farms, had firsthand knowledge of the need to use proceeds from sale of the grain for repayment, and failed to use the proceeds in that manner, it is not improper that he was principally charged under 714m(c). See Marteney v. United States, 218 F.2d 258 (10th Cir.) (defendant who knew company's financial condition and was responsible for grain purchase and sale is culpable for conversion in violation of 714m(c)).
 
 
 12
 Talbert further argues that the evidence failed to show that he actually sold 1986 grain under lien to the government. This argument fails at its inception because even if we assume that it is factually accurate it is entirely dependent on our finding that Talbert was not responsible for grain sold by Mr. Koozer. As stated above, we find that there was ample evidence presented that Talbert was the sole decisionmaker with regard to financial transactions which include grain sale. The fact that Mr. Koozer played a role in the sale of grain does not foreclose our inquiry regarding Talbert's involvement. Moreover, there was abundant evidence presented that Talbert was indeed present at the time the 1986 grain was sold. Finally, as recited above, the evidence presented provides a firm factual basis for a jury to determine that Talbert knew of the need to repay the loans with proceeds from the sale of 1986 grain, that he was present at an inspection in which this was explained, and that after obtaining permission to sell the remaining grain the loans were not repaid despite the removal of the grain from Sangre de Cristo Farms.
 
 
 13
 Talbert next challenges the admissibility of three items of evidence. First, Talbert contends that the admission of a racially derogatory comment made to a minority employee at the ASCS office when it became known to Talbert that the loan proceeds were jointly made to Talbert and a prior lienholder served no proper purpose and thus was admitted in violation of Federal Rules of Evidence 404(b) governing other crimes, wrongs or acts. See Huddleston v. United States, 485 U.S. 681 (establishing criteria for admission of prior acts); United States v. Herndon, 982 F.2d 1411 (10th Cir.). Second, Talbert contends the trial court improperly allowed the prosecution to offer evidence that Talbert was rejected in a similar ASCS program in Wyoming, apparently over certain technical aspects of eligibility which the prosecution contended Talbert manipulated in another attempt to defraud ASCS. Finally, Talbert argues that a reference by his bookkeeper at trial to money owed the I.R.S. was prejudicial and rendered his trial unfair.
 
 
 14
 After review of the record and in particular the trial court transcripts, we conclude that the trial court did not abuse its discretion with regard to any of its evidentiary determinations at issue. See United States v. Owen, 15 F.3d 1528, 1532 (10th Cir.). We agree with the magistrate judge's recommendation, which was ultimately adopted by the district court, that the derogatory remark made to the ASCS employee was probative of whether Talbert did participate in loan transactions with ASCS, an issue upon which conflicting statements were made. We conclude that this evidence was offered for a proper purpose, was relevant, that its probative value was not substantially outweighed by its potential for prejudice, and that the trial court properly instructed the jury with regard to the purpose of the evidence. See Herndon, 982 F.2d at 1414. We further agree with the magistrate judge's and the trial court's conclusion that Talbert's additional loan applications with ASCS were likewise properly admitted as evidence of his financial condition, which was at issue throughout the trial. Finally, Talbert's trial counsel failed to object to the reference by the bookkeeper to money Talbert owed the I.R.S. We find that no plain error occurred. See United States v. Culpepper, 834 F.2d 879, 882-83 (10th Cir.) (where there is no contemporaneous objection, the claimed error is reviewed under the plain error standard).
 
 
 15
 The final issue raised by Talbert on appeal is with regard to the district court's authority to impose restitution. Talbert argues that the Victim Witness Protection Act, 18 U.S.C. 3663, does not provide the district court with authority to impose restitution for the charged offense because it is not a crime identified in Title 18 of the United States Code or Section 902 of the Federal Aviation Act. However, the distinction that permits the imposition of restitution in the instant case is that Talbert's restitution was imposed as a condition of supervised release. See 18 U.S.C. 3563(b)(3); 18 U.S.C. 3583(d). See also Gall v. United States, 21 F.3d 107, 109-11 (6th Cir.). Accordingly, the district court did not exceed its authority by ordering restitution as a condition of Talbert's supervised release.
 
 
 16
 Based on the foregoing, we AFFIRM the conviction of William R. Talbert.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470