**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Larry MAYES, and Dallas Earl
Scott, Defendants–Appellants.**

**Nos. 90–3016, 90–3017.**

United States Court of Appeals,
Tenth Circuit.

Oct. 24, 1990.

Richard L. Hathaway, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., with him on the briefs), Topeka, Kan., for plaintiff-appellee.

Robert E. North, Topeka, Kan., for defendant-appellant Robert Larry Mayes.

Mark W. Works, Works, Works, & Works, P.A., Topeka, Kan., for defendant-appellant Dallas Earl Scott.

Before HOLLOWAY, Chief Judge, SEYMOUR and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Robert Mayes and Dallas Scott were each convicted, in a joint trial, of one count of conspiring to distribute heroin in the Leavenworth federal prison and fifteen counts of using a telephone in the commission of the crime.

## I.

The defendants claim that the indictment should have been dismissed pursuant to Fed.R.Crim.P. 48(b) because of the delay between the offense and the indictment, and that the period between indictment and

trial exceeded that permitted by the Speedy Trial Act.[1]

■ Rule 48(b) provides that "[i]f there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant *who has been held to answer to the district court,* ... the court may dismiss the indictment, information or complaint." Fed.R.Crim.P. 48(b) (emphasis added). The emphasized phrase requires that the defendant be arrested and bound over for trial. 8B J. Moore, *Moore's Federal Practice* ¶ 48.03[1], at 48–18 n. 8 (1990). Mayes and Scott were not arrested on these charges, because they were already incarcerated. They have no claim under Rule 48(b). *United States v. Marion,* 404 U.S. 307, 319, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971); *United States v. Primrose,* 718 F.2d 1484, 1488 (10th Cir.1983), *cert. denied,* 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984).

■ They also argue that their motion to dismiss for a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161–74, should have been granted. 729 F.Supp. 87. The motion was made on November 2, 1989 and never renewed, so any subsequent delay is irrelevant to our inquiry (because it was never challenged below). *United States v. Wirsing,* 867 F.2d 1227, 1230 (9th Cir.1989). Mayes and Scott were indicted along with one Frances Nickel. The speedy trial period did not run as to Nickel because she was a fugitive who had not been brought before the court. 18 U.S.C. § 3161(h)(3).

"Under 18 U.S.C. § 3161(h)(7), any 'reasonable period of delay' excludable as to one defendant is excludable as to his or her codefendants." *United States v. Tranakos,* 911 F.2d 1422, 1426 (10th Cir.1990). In determining whether it is reasonable to apply this delay to Mayes and Scott, "we must weigh the 'relevant circumstances.' " *Id.* (quoting *United States v. Theron,* 782 F.2d 1510, 1514 (10th Cir. 1986)).

One important factor is that they were already incarcerated, so the delay did not affect their liberty. *See United States v. Tranakos,* at 1426 (delay caused by one defendant did not affect codefendants' liberty because they were free on bond); *United States v. Mobile Materials, Inc.,* 871 F.2d 902, 917 (10th Cir.) (same), *modified on other grounds,* 881 F.2d 866 (10th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990).

Also, "the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial" must be considered. *United States v. Theron,* 782 F.2d [1510,] 1514 [ (10th Cir.1986) ]. Where "the government will recite a single factual history, put on a single array of evidence, and call a single group of witnesses," a single trial is preferred. *United States v. Mobile Materials, Inc.,* 871 F.2d at 916. This is such a case, for the defendants were charged with a single conspiracy. *See, e.g., United States v. Wright,* 826 F.2d 938, 945 (10th Cir. 1987).

*United States v. Tranakos,* at 1426. It is also important that the defendants never asked to be tried separately from Nickel. *Id.* at 1427; *United States v. Mobile Materials, Inc.,* 871 F.2d at 917. We conclude that it is reasonable to apply to Mayes and Scott the exclusion caused by Nickel's flight. Therefore, no nonexcludable time ran under the Act.

## II.

Mayes and Scott did move to be tried separately from each other. These motions were denied. "The decision whether to grant severance and order separate trials is 'within the sound discretion of the trial court and its decision will not ordinarily be reversed in the absence of a strong showing of prejudice.' " *United States v. Hayes,* 861 F.2d 1225, 1231 (10th Cir.1988) (quoting *United States v. Valentine,* 706 F.2d 282, 289–90 (10th Cir.1983)). "The court must weigh any potential prejudice against the important considerations of economy and expedition in judicial administration." *United States v. Esch,* 832 F.2d 531, 537 (10th Cir.1987), *cert. denied,* 485

---

**1.** They make no constitutional claims based on these delays.

U.S. 908 and 991, 108 S.Ct. 1084 and 1299, 99 L.Ed.2d 242 and 509 (1988). As noted above, these considerations are quite strong when the codefendants allegedly conspired with each other.

■ The defendants first contend that the refusal to sever was error because Scott testified on his own behalf while Mayes exercised his privilege against self-incrimination, allowing the jury to infer Mayes's guilt from his failure to testify and then impute that guilt to Scott. In essence, Mayes argues that by the mere act of testifying, Scott commented on Mayes's silence. We disagree. *See United States v. McClure*, 734 F.2d 484, 491 (10th Cir.1984) (defendant comments on codefendant's silence only by statement "of 'such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify'" (quoting *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir.1955)). The rule sought by the defendants would prohibit any joint trial of a testifying defendant and a non-testifying defendant. This is not the law.

■ The defendants also contend that, because counts two through fifteen of the indictment alleged the same crime (using a telephone in the commission of a felony), the jury was likely to become confused as to the evidence against each defendant on each count. The court instructed the jury that each count went to a different incident, *see* Tr. at 260–61, and that it should consider individually the charges against each defendant, *see* R.Supp. Vol. I at 7, 10.

The defendants have not shown prejudice requiring separate trials. *United States v. Williams*, 897 F.2d 1034, 1037–38 (10th Cir. 1990); *United States v. Cardall*, 885 F.2d 656, 668 (10th Cir.1989).

### III.

■ Mayes and Scott argue that Fed.R. Crim.P. 16(a)(2) [2] violates the accusation and confrontation clauses of the Sixth Amendment [3] and their "right to information" under the First Amendment. They cite no authority for these bald assertions. The constitution does not grant criminal defendants the right to embark on a "broad or blind fishing expedition among documents possessed by the Government...." *Jencks v. United States*, 353 U.S. 657, 667, 77 S.Ct. 1007, 1012, 1 L.Ed.2d 1103 (1957). *See also United States v. Maranzino*, 860 F.2d 981, 985–86 (10th Cir.1988). The record does not indicate Mayes and Scott were denied access to any material evidence. From indictment to sentencing, they were provided with more than enough information to satisfy the requirements of the Sixth Amendment. There is no First Amendment right to the information sought.

### IV.

■ Mayes and Scott contend the trial court erred in denying their motion to subpoena certain witnesses pursuant to Fed.R. Crim.P. 17(b). [4] They apparently allege that the trial court should have subpoenaed federal inmates McManamy, Rameriz, and Greshiner. [5] They claim McManamy and

---

**2.** The Rule provides:

(2) Information Not Subject to Disclosure. Except as provided in paragraphs (A), (B), and (D) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500.

**3.** The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; to be confronted with

the witnesses against him...." U.S. Const. Amend. VI.

**4.** Rule 17(b), in pertinent part, provides:

The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.

**5.** In support of this contention, they cite to the court's discussion of witnesses Bontrager, Hill, and Shulor, all of whom the court allowed to testify. Nothing in the record on appeal sug-

Ramirez would have testified as to defendant Scott's lack of motive, and Greshiner would have testified about the Aryan Brotherhood.

■ "[A] trial court need not grant a Rule 17(b) motion if a requested witness would only provide cumulative evidence." *United States v. Bloomgren*, 814 F.2d 580, 585 (10th Cir.1987). We review the correctness of 17(b) rulings under the abuse of discretion standard. *United States v. Greschner*, 802 F.2d 373, 378 (10th Cir. 1986), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987); *United States v. Stoker*, 522 F.2d 576, 578–79 (10th Cir. 1975).

The proposed motive testimony of McManamy and Rameriz was cumulative and irrelevant.[6] Greschner's proposed testimony was unnecessary: the defendants obtained a pretrial order prohibiting the government from mentioning the Aryan Brotherhood. *See infra*, section VII. If the trial court did deny subpoena requests for McManamy, Ramirez and Greshiner, we cannot say it was an abuse of its discretion.

## V.

■ Midway through the trial, Scott announced that he wanted to proceed *pro se*. *See* Tr. at 153. His request was denied. *See id.* at 154. He now argues that this denied him his absolute constitutional right to conduct his own defense.

"It is fundamental, however, that the right to self-representation is unqualified only if demanded *before* trial." *United States v. Wesley*, 798 F.2d 1155, 1155 (8th Cir.1986) (emphasis added); *accord, e.g., United States v. Brown*, 744 F.2d 905, 908 (2d Cir.), *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984). "If the right is not asserted before trial, it becomes discretionary with the trial court whether to allow the defendant to proceed *pro se.*" *United States v. Gillis*, 773 F.2d 549, 559 n. 14 (4th Cir.1985); *accord, e.g., Fulford v. Maggio*, 692 F.2d 354, 362 (5th

Cir.1982), *reversed on other grounds*, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983). "In reaching its decision, the trial court must balance whatever prejudice is alleged by the defense against such factors as disruption of the proceedings, inconvenience and delay, and possible confusion of the jury." *Fulford v. Maggio*, 692 F.2d at 362. Other considerations include "the reason for the request[ and] the quality of the counsel representing the party...." *Sapienza v. Vincent*, 534 F.2d 1007, 1010 (2d Cir.1976).

Scott was represented by counsel through five months of pretrial proceedings and two days of trial. On the third day of the four-day trial, he requested leave to proceed *pro se* so that he could examine and cross-examine witnesses. Tr. at 153. He did not find his counsel unsatisfactory; he just felt that he was "better qualified." *Id.* at 153–54. In view of the narrow purpose for which Scott sought to represent himself, the possible disruption of the trial, and the potential jury confusion engendered by a defendant representing himself and testifying, the trial court did not abuse its discretion when it denied Scott's mid-trial request to take over for competent counsel. *See United States v. Lawrence*, 605 F.2d 1321, 1324–25 (4th Cir. 1979), *cert. denied*, 444 U.S. 1084, 100 S.Ct. 1041, 62 L.Ed.2d 770 (1980).

## VI.

Mayes and Scott also appeal the trial court's decision not to suppress or exclude tape recordings and transcripts of certain telephone conversations.

■ They first argue that the transcripts were unnecessary; because the recordings were so clear, the jury did not need the transcripts to assist them. Limited use of transcripts is in the discretion of the trial court. *United States v. Mittleider*, 835 F.2d 769 (10th Cir.1987), *cert. denied*, 485 U.S. 980, 108 S.Ct. 1279, 99

---

gests the defendants requested or were denied Rule 17(b) subpoenas for McManamy, Ramirez and Greshiner.

6. Scott testified about his lack of motive. Moreover, the prosecution's case did not rely on motive.

L.Ed.2d 490 (1988); *United States v. Watson,* 594 F.2d 1330, 1336 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). Here, as in *Mittleider* and *Watson,* the court instructed the jury to use the transcripts only to assist them in listening to the tapes. R.Vol. III at 52–53. We cannot say the court abused its discretion in this regard.

■ Mayes and Scott next object that the transcripts were an "inaccurate" rendition of the conversations because the prosecution did not transcribe all of the recorded conversations. They do not claim, however, that the resulting transcripts were misleading. Moreover, defendants had access to the tape recordings and the trial court advised them they were free to introduce any other portion they desired. *See* R. Vol. III at 58–59. It was certainly within the trial court's discretion not to require the prosecution to transcribe all of the conversations the government recorded.

■ The defendants further contend it was error to allow the transcripts to identify the respective voices on the tape recordings. This, they suggest, prejudiced the jury because testimonial evidence identifying the voices as those of the defendants was not introduced until after the recordings and transcripts were presented. But the

"[u]se of transcripts here is not for purposes of establishing that a particular voice belongs to a particular person, but so that the jury may understand which

voice the prosecution wants the jury to believe belongs to a particular person." *United States v. Watson,* 594 F.2d at 1336 n. 7. Such use is within the trial court's discretion. *Id.*

Mayes and Scott also contend that the tape recorded telephone conversations are inadmissible hearsay and that their introduction violated the Confrontation Clause of the Sixth Amendment.

■ Sixteen separate phone conversations (Exhibits 2 through 17) were introduced into evidence. Most of the conversations involved the defendants and various coconspirators (Exhibits 2 through 15). Two of the conversations were between coconspirators Alice Rodriguez and Debbie Martinmianakis (Exhibits 16 and 17). The briefs on appeal devote considerable space to debating whether the defendants' statements in these conversations (Exhibits 2 through 15) qualify under Fed.R.Evid. 804(b)(3)[7] as admissible declarations against penal interest. The debate is irrelevant. The defendants' statements are admissions under Fed.R.Evid. 801(d)(2)(A)[8], and are not hearsay. *See United States v. Allison,* 908 F.2d 1531, 1534 (11th Cir. 1990).

■ Statements of the coconspirators are admissible under Fed.R.Evid. 801(d)(2)(E).[9] Mayes and Scott argue that the conversations between Rodriguez and Martinmianakis (Exhibits 16 and 17) were not "during the course and in the furtherance of the conspiracy"[10] and should not

---

7. The Rule provides:

804(b) The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

8. The Rule provides:

801(d) Statements which are not hearsay. A statement is not hearsay if—
(2) Admission by party-opponent. The statement is offered against a party and is (A) the

party's own statement in either an individual or representative capacity. . . .

9. The Rule provides:

801(d) Statements which are not hearsay. A statement is not hearsay if—
(2) Admission by party-opponent. The statement is offered against a party and is
(E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

10. They do not, on appeal, challenge the sufficiency of the evidence demonstrating the existence of the conspiracy or their connection to it. *See United States v. Hernandez,* 829 F.2d 988, 993 (10th Cir.1987), *cert. denied,* 485 U.S. 1013, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988); *United States v. Petersen,* 611 F.2d 1313, 1330–31 (10th

have been admitted into evidence. They assert that, since Rodriguez had already surrendered the heroin to the FBI, the conspiracy had failed and Martinmianakis' instructions to Rodriguez how to smuggle the heroin into Leavenworth could not have furthered the conspiracy.

■ We review this evidentiary determination for abuse of discretion. *United States v. Porter*, 881 F.2d 878 (10th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir.), *cert. denied*, 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988). We accept the underlying factual findings unless they are clearly erroneous. *United States v. Peveto*, 881 F.2d 844, 852 (10th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Smith*, 833 F.2d 213, 221–222 (10th Cir.1987).

■ The time at which a conspiracy ends depends upon the particular facts of the case. *Id.* at 220; *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir. 1984). "Generally, a conspiracy terminates when its central criminal purposes have been attained." *United States v. Smith*, 833 F.2d at 220; *United States v. Silverstein*, 737 F.2d at 867. The central criminal purpose of the conspiracy in this case was to introduce heroin into Leavenworth for illicit distribution. We have rejected the "proposition that the statements must *actually* further the conspiracy to be admissible. Rule 801(d)(2)(E) explicitly says statements need be 'in furtherance of the conspiracy,' not that they 'further the conspiracy.' It is enough that they be intended to promote the conspiratorial objectives." *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir.1986) (emphasis in original).

We cannot say the trial court's finding that Martinmianakis intended to promote the conspiratorial objectives is clearly erroneous. Nor do we find that the decision to allow the tape recorded conversations between Rodriguez and Martinmianakis into

Cir.1979), *cert. denied*, 477 U.S. 905, 100 S.Ct.

evidence under 801(d)(2)(E) was an abuse of the trial court's discretion.

Mayes and Scott did not raise their constitutional argument at trial. "[O]rdinarily, a party may not present a Confrontation Clause objection for the first time on appeal." *United States v. Gomez*, 810 F.2d 947, 954 (10th Cir.), *cert. denied*, 482 U.S. 908, 107 S.Ct. 2488, 96 L.Ed.2d 379 (1987). Even if we review for plain error, "the requirements for admission under Rule 801(d)(2)(E) are identical to the requirements of the Confrontation Clause, and since the statements were admissible under the Rule, there was no constitutional problem." *United States v. Bourjaily*, 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987).

## VII.

The defendants allege two incidents of prosecutorial misconduct.

### A.

■ A pretrial order prohibited the government from mentioning the Aryan Brotherhood, a prison gang to which the defendants belonged, without first approaching the court. *See* R. Vol. I, Tab 26 at 3.

Scott testified that a government witness, a fellow prisoner named Hutchinson, made accusations against him because

> I've been around in the prison system quite a while and have a lot of friends throughout the system, not just at Leavenworth, and I think he's scheming enough to know that if he testified against me ... that they would have to remove him from the federal prison system for his own protection and that way he hoped to get to a less secure institution.

Tr. at 189. The following exchange took place during cross-examination:

Q. You're a pretty important man over at Leavenworth, sir?

A. I am just another number.

2985, 2986, 64 L.Ed.2d 854 (1980).

Q. You've got friends in prisons all around the country, don't you, by your own testimony?

A. Yes. Most prisoners do have friends all over the country.

Q. Well, your friends are a little bit more organized than the average prisoner, isn't that true, sir?

A. No, not—

Q. Your friends run the drugs in the United States prisons around the country, don't they, Mr. Scott?

A. No, sir, they don't.

Q. You're not a member of any group that controls the drugs in the U.S. prisons?

MR. WORKS: I'll object to the testimony—There's no testimony there's any organization like that.

THE COURT: This is cross-examination. All he has to do is say he's not and that is the end of it.

Q. (By Mr. Hathaway) And it was your testimony, sir, that these friends of yours would make it very bad for Mr. Hutchinson if he were to do something to cause you a problem?

A. This is true. Again, most convicts—

Q. Would they kill Mr. Hutchinson on your behalf?

A. Who, friends of mine?

Q. Yes.

A. No. I wouldn't ever ask them to. I wouldn't ask anybody to.

*Id.* at 194–95.

The defendants contend on appeal that "the inflammatory insinuations about the defendant[']s membership in a prison gang that would commit *murder* for the defendant is a thinly veiled reference to this 'Aryan Brotherhood.'" Brief of Appellants at 28 (emphasis in original). This issue was not raised below,[11] so we review only for plain error. *United States v. McKinney,* 822 F.2d 946, 951 (10th Cir. 1987). Any reference to the Aryan Brotherhood was too "veiled" for the cross-examination to be a plain violation of the

pretrial order. *See United States v. Benally,* 756 F.2d 773, 777 (10th Cir.1985).

B.

Mayes and Scott argued below that the voices in the taped telephone conversations were not theirs. Defense counsel stated during closing argument:

I think that you should consider the fact that the government had the opportunity to do electronic computer assisted voice identification and conclusively prove that these were the voices of the defendants. They didn't do that, and I don't know why. They went to a lot of expense putting on this trial. I don't think it was a question of dollars.

Tr. at 247.

The government responded:

The defense counsel would have you let these guys go because we didn't get involved with some kind of sophisticated voice identification. I don't even know what they're talking about, frankly. I don't know of any such system of sophisticated voice identification, but if there is such a system, *you should ask yourself why they didn't do something in that regard. They have the same powers and processes and access to court authority as I do. They have the ability to apply to the Court for assistance in this case to try to get scientific testing and that sort of thing. If there is such a test that would have revealed that their clients were not the individuals on these phone calls, where are the results of that sophisticated test?* We put on what is the traditional method of identifying a voice, and that is individuals who are familiar with that voice. And they left no doubt in their testimony. They left no doubt in their testimony these were the voices of Larry Mayes and Dallas Earl Scott.

Tr. at 258 (emphasis added).

The defendants characterize this as an attempt to "shift the burden of proof over to Mr. Mayes and Mr. Scott to prove their

11. The only objection made was that the cross-examination exceeded the scope of Scott's direct testimony. *See* Tr. 195. An issue is not raised

by objecting on other grounds. *United States v. Gomez,* 810 F.2d at 958 n. 14; *United States v. Glover,* 677 F.2d 57, 59 (10th Cir.1982).

innocence by requiring them to produce voice identifications proving that they were not the parties allegedly tape recorded...." Brief of Appellants at 23. However,

> [a]s long as evidence can be solicited other than from the mouth of the accused, it proper to comment upon the failure of the defense to produce it.... [Such a comment does] not shift the burden of proof to the defendant in light of the trial court's subsequent instructions to the jury that arguments of lawyers are not evidence, that the burden of proof is with the government, and that the defendant has no burden to prove innocence, to call witnesses, or to produce any evidence at all.

*United States v. Gomez–Olivas*, 897 F.2d 500, 503–04 (10th Cir.1990).

### VIII.

■ Finally, Scott argues that the section of the sentencing guidelines which provides for reduced sentences for defendants who affirmatively accept personal responsibility for their criminal conduct, United States Sentencing Commission, *Guidelines Manual*, § 3E1.1 (Nov.1989), violates his Fifth Amendment privilege against self-incrimination. We rejected this argument in *United States v. Rogers*, 899 F.2d 917, 924–25 (10th Cir.), *cert. denied*, ⸺ U.S. ⸺, 111 S.Ct. 113, 112 L.Ed.2d 83, and see no need to repeat the analysis.[12]

### CONCLUSION

We find neither reversible error nor constitutional deficiency in the proceedings below. Accordingly, the judgment of the district court is AFFIRMED.

12. He also contends that the guideline violates equal protection in that it results in different sentences for defendants convicted of the same crime. This argument was rejected in *United States v. Trujillo*, 906 F.2d 1456, 1465 (10th Cir.1990). Giving defendants who accept responsibility for their conduct lighter sentences than unrepentant defendants is rationally related to the government's legitimate interest in rehabilitating convicted criminals.