**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Merrie Warren TURNER, aka Merrie
Foutz, Defendant–Appellant.**

No. 93–3370.

United States Court of Appeals,
Tenth Circuit.

Jan. 24, 1995.

Robin D. Fowler (Randall K. Rathbun, U.S. Atty., and Michael G. Christensen, Asst. U.S. Atty., with him on the brief), Asst. U.S. Atty., Wichita, KS, for plaintiff-appellee.

Braden W. Sparks (Michael C. McClintock, Gonzaga University School of Law, Spokane, WA, with him on the briefs) of Braden W. Sparks, P.C., Dallas, TX, for defendant-appellant.

Before BRORBY and McWILLIAMS, Circuit Judges, and BURCIAGA,* District Judge.

BRORBY, Circuit Judge.

The defendant, Merrie W. Turner, appeals the district court's decision refusing to instruct the jury on the defense of necessity and imposing certain limitations as conditions of her probation. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

## BACKGROUND

Due to persistent antiabortion protests at a clinic in Wichita, Kansas, a preliminary injunction was issued on August 5, 1991, by a United States District Court in Wichita. The injunction prohibited, *inter alia,* "trespassing on, sitting in, blocking, impeding or obstruct[ing] ingress into or egress from any facility at which abortions, family planning, or gynecological services are provided by plaintiffs in Wichita, Kansas."

On August 20, 1991, Ms. Turner scaled the fence surrounding the Women's Health Care Services clinic with about forty other protesters. Ms. Turner testified she was at the clinic as a "sidewalk counselor" and entered the clinic in order to pray and place her body in front of a woman who was attempting to enter the clinic.

Ms. Turner was indicted for assault on a federal officer in violation of 18 U.S.C. § 111, and obstruction of a federal court order in violation of 18 U.S.C. § 1509. The assault charge was dropped and Ms. Turner was eventually convicted by a jury on the obstruction charge. Ms. Turner filed a motion for judgment of acquittal, which was denied by the district court. *United States v. Cooley,* 787 F.Supp. 977, 982–83 (D.Kan.1992). On appeal, this court vacated and remanded that ruling on the ground the district court judge should have recused himself from presiding over the trial. *United States v. Cooley,* 1 F.3d 985, 998 (10th Cir.1993).

Ms. Turner was retried and again convicted. Judgment was entered against her and a sentence of one year supervised probation imposed. (Doc. 103.) This appeal followed.

## DISCUSSION

### A

Ms. Turner's primary claim on appeal is the district court erred in refusing to instruct the jury on the defense of necessity. "The refusal to give a particular jury instruction, even if the instruction is an accurate statement of the law, is within the discretion of the district judge." *United States v. Vasquez,* 985 F.2d 491, 496 (10th Cir.1993). Moreover, while "a defendant is entitled to an instruction regarding [her] theory of the case, ... [a] defendant is not entitled to an instruction which lacks a reasonable legal and factual basis" *id.; see also United States v. Schoon,* 971 F.2d 193, 195 (9th Cir.1991) ("A district court may preclude a necessity defense where 'the evidence ... is insufficient as a matter of law to support the proffered defense.' "), *cert. denied,* —— U.S. ——, 112 S.Ct. 2980, 119 L.Ed.2d 598 (1992).

Ms. Turner argues the district court erred in refusing to provide the jury with the following instruction:

An element of the government's case is that the defendant did not commit the crime charged in this case to avoid a greater evil. The defendant acted to avoid a greater evil if:

1. The evil she sought to avoid was greater than the evil sought to be prevented by the law defining the crime she is charged with committing.

---

* The Honorable Juan G. Burciaga, District Judge for the District of New Mexico, sitting by desig-

nation.

2. The defendant believed that her conduct was necessary to avoid an evil to other persons; and

3. The defendant believed that her conduct was the least harmful alternative to avoid this evil.

■ Invocation of the necessity defense requires a showing by the defendant that: (1) she was faced with a choice of evils and chose the lesser evil; (2) she acted to prevent imminent harm; (3) she reasonably anticipated a direct causal relationship between her conduct and the harm to be averted; and (4) she had no legal alternatives to violating the law. *United States v. Schoon*, 955 F.2d 1238, 1239–40 (9th Cir.1991).

> The defense of necessity does not arise from a "choice" of several courses of action.... It can be asserted only by a defendant who was confronted with ... a crisis which did not permit a selection from among several solutions, some of which did not involve criminal acts. It is obviously not a defense to charges arising from a typical protest.

*United States v. Seward*, 687 F.2d 1270, 1276 (10th Cir.1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 789, 74 L.Ed.2d 995 (1983); *see also United States v. Bailey*, 444 U.S. 394, 410, 100 S.Ct. 624, 635, 62 L.Ed.2d 575 (1980) ("if there was a reasonable, legal alternative to violating the law ... the defenses [of necessity or duress] will fail").

■ While citing almost fifty cases holding that the defense of necessity does not apply to those who seek to obstruct access to, or the operations of abortion clinics, *see, e.g., City of Wichita v. Tilson*, 253 Kan. 285, 855 P.2d 911, 915–16 ("Every appellate court to date which has considered the issue has held that abortion clinic protestors ... are precluded, as a matter of law, from raising a necessity defense"), *cert. denied*, —— U.S.

——, 114 S.Ct. 468, 126 L.Ed.2d 420 (1993), Ms. Turner nevertheless argues the defense of necessity applies here because "[s]he entered the clinic's premises for the express and sole purpose of educating this woman with essential information concerning medical facts related to fetal age as well as other available options should she wish to forego the abortion."

This case does not require us to examine each of the four elements needed to invoke the necessity defense (although there is precedent to support the conclusion that all four are wanting in cases such as this). Rather, Ms. Turner's appeal can be resolved solely on the basis that legal alternatives existed to her violating the law and thus, she was not entitled to have the jury instructed on the defense of necessity.

There is little question but that the goals of educating women concerning medical knowledge about abortions and alternatives to abortion could be achieved by any number of legal alternatives. *See, e.g., Zal v. Steppe*, 968 F.2d 924, 929 (9th Cir.) (noting necessity defense unavailable to abortion protestors because legal alternatives existed to achieve goal of persuading women not to have abortions), *cert. denied*, —— U.S. ——, 113 S.Ct. 656, 121 L.Ed.2d 582 (1992); *Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342, 1350–52 (3rd Cir.) (same), *cert. denied*, 493 U.S. 901, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989). For instance, Ms. Turner could go door-to-door conveying her views, distribute literature personally, through the mails or via publication, or simply continue her otherwise lawful protests. Plainly, women can be, and in fact are educated on issues concerning abortion by legal means; violating the laws of the United States and ignoring orders of the federal courts are not the only way of doing so.[1]

---

**1.** Although Ms. Turner does not argue the point, we note parenthetically her testimony that she entered the clinic to educate a *particular* woman does not change our conclusion that legal alternatives were available to her. First, it is axiomatic that in targeting any given women's health clinic for protest, the protestors seek to influence the individual woman who may patronize that clinic, though they may also seek to influence the public generally. Second, Ms. Turner could have

espoused her views and provided information to this woman while standing on public property and within the permissible limits of the district court's injunction. In fact, Ms. Turner specifically testified that on the day of her arrest, before scaling the clinic walls, she "first handed literature to the women to educate them as I've done many years in the past and that they might have an informed decision."

While it may be true, as Ms. Turner argues, that she could have taken more drastic means of educating women, this does not change the fact that the means she chose were illegal. As such, we conclude the defense of necessity is not available as a matter of law under the facts presented.

In addition, we agree with the observations of the Kansas Supreme Court that to permit the defense of necessity under facts similar to those presented here would not only be a recipe for disaster, but would call into question the very foundations of civil society and constitutional democracy.

> To allow the personal, ethical, moral, or religious beliefs of a person, no matter how sincere or well-intended, as a justification for criminal activity aimed at preventing a law-abiding citizen from exercising her legal and constitutional rights would not only lead to chaos but would be tantamount to sanctioning anarchy.

*Tilson,* 855 P.2d at 918. The district court properly refused to instruct the jury on the defense of necessity.

**B**

■ Ms. Turner also argues the district court erred in imposing as a condition of her probation that she not "harass, intimidate or picket in front of any gynecological or abortion family planning services center." Without citing any authority, Mr. Turner asserts this condition amounts to a prior restraint in violation of her First Amendment liberties. A court has broad discretion in setting conditions of probation. *United States v. Lawson,* 670 F.2d 923, 929 (10th Cir.1982).

18 U.S.C. § 3563(b) provides discretionary conditions a sentencing court may impose as conditions of probation. Included among them are that the defendant:

> (6) refrain, in the case of an individual, from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances;

> (7) refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons.

■ Incidental restrictions of First Amendment rights to freedom of speech and association are permissible if reasonably necessary to accomplish the essential needs of the state and public order. *Birzon v. King,* 469 F.2d 1241, 1243 (2d Cir.1972). Courts have consistently upheld imposition of conditions of probation that restrict a defendant's freedom of speech and association when those conditions bear a reasonable relationship to the goals of probation. *Cf. Porth v. Templar,* 453 F.2d 330, 334 (10th Cir.1971) (within discretion of trial court to restrict the probationer's association with "groups that would palpably encourage him to repeat his criminal conduct"); *see also United States v. Bortels,* 962 F.2d 558, 560 (6th Cir.1992) (per curiam); *United States v. Showalter,* 933 F.2d 573, 575–76 (7th Cir.1991); *Malone v. United States,* 502 F.2d 554, 556–57 (9th Cir.1974), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975).

■ There is no question here but that the conditions imposed on Ms. Turner bear a reasonable relationship to the goal of her probation. Given her deeply held convictions regarding abortion, it is not fantastic to speculate that if she were permitted to protest at abortion clinics, she might not be able to restrict her activities within lawful parameters. In order to help insure Ms. Turner does not repeat her criminal conduct, the district court did not abuse its discretion by imposing this condition as a term of her probation.

The judgment of the district court is AFFIRMED.