77 F.3d 493
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph Harris WOODS, Defendant-Appellant.
 No. 94-4245.
 United States Court of Appeals, Tenth Circuit.
 Feb. 26, 1996.
 
 ORDER AND JUDGMENT[1]
 Before BALDOCK, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and REAVLEY, Senior Circuit Judge.[2]
 
 
 1
 As a result of a plea agreement, Joseph Harris Woods pled guilty to the second count of a two-count indictment charging him with conspiring with Daniel Martinez and Jill Butterfield and other persons known and unknown to the Grand Jury to manufacture methamphetamine in violation of 21 U.S.C. 846. Prior to entering the plea of guilty, a written "Statement by Defendant in Advance of Plea of Guilty" was filed with the district court. Contained in the statement, inter alia, was the following:
 
 
 2
 3. I know that the sentencing procedures in this case, and the ultimate sentence, will be determined pursuant to the Sentencing Reform Act of 1984, and I have discussed these facts with my attorney. I further know that the final calculation by the Court for sentencing purposes under the procedures applicable to that Act may differ from any calculation the United States, my attorney, or I may have made, and I will not be able to withdraw my plea in spite of that fact.
 
 
 3
 ....
 
 
 4
 12. The only terms and conditions pertaining to this plea agreement between me and the government are as follows:
 
 
 5
 (1) In exchange for defendant's plea of guilty to Count II, the United States will move to dismiss Count I of the indictment.
 
 
 6
 (2) Because of defendant's plea of guilty to 94-CR-11-S, the United States will recommend that no upward adjustment be made in this case for obstruction of justice.
 
 
 7
 (3) The United States believes and recommends that no adjustments be made for role in the offense.
 
 
 8
 (4) The lowest level of the guideline range is recommended as the appropriate sentence.
 
 
 9
 13. I understand that the Court can make no decision as to what the sentence will be until the Presentence Report has been received and reviewed by the Judge. I further understand that the Court is not obligated in any way to follow the recommendation of the government concerning sentencing matters. If the Court does not follow the government's recommendation, I know that I will not be allowed to withdraw my pleas of "Guilty."
 
 
 10
 The Probation Department thereafter conducted a presentence investigation and filed a presentence report. In paragraph 26, the presentence report recommended that under Sentencing Guidelines 3B1.1(c), Woods' offense level be increased by two because he was a "leader" in the offense to which he had pleaded guilty, namely a conspiracy with Daniel Martinez and Jill Butterfield, and others, to manufacture methamphetamine. In support of that recommendation, the presentence report indicated, inter alia, that Woods "admits the methamphetamine lab was his" and that the co-defendants were "just more or less there."
 
 
 11
 In paragraphs 10 through 18 of the presentence report the probation officer, Lavarr W. McBride, under the heading, "The Offense Conduct," set forth the results of his investigation into the circumstances surrounding the offense to which Woods had pleaded guilty. Without reciting all of the material contained in those eight paragraphs, the report states that the investigating agents found "a complete operational clandestine methamphetamine laboratory set up in the southwest corner of the basement" of a residence where Woods and co-conspirator Martinez resided. In paragraph 18 of the presentence report, the DEA agent was quoted as stating that Woods was the "ring leader" in the offense and that Martinez "was simply Mr. Woods' 'gopher.' "
 
 
 12
 In response to the presentence report, Woods and the government filed a "Joint Position of the Defendant and Government with Respect to Sentencing Factors." The body of that document, in its entirety, reads as follows:
 
 
 13
 1. In the plea agreement, the parties agreed that the defendant not be given a 2 level increase for role in the offense based on the reason that such a factor was not readily provable from the evidence.
 
 
 14
 2. Based on the above agreement, defendant's attorney informed him that he would not receive an increase for role in the offense and that when he met with the probation officer, he should be candid and truthful in his discussion about the facts of the case.
 
 
 15
 3. It is unfair to use his full acceptance of responsibility statement to penalize him with a role in the offense adjustment.
 
 
 16
 At the sentencing hearing, the district court adopted the recommendations of the probation department and sentenced Woods to imprisonment for 78 months. Woods appeals the sentence thus entered, arguing that, in the light of all the circumstances above described, the district court erred in increasing Woods' base offense level by two because he was a "leader" in the offense.
 
 
 17
 Specifically, Woods initially argues that his rights under the Self-Incrimination Clause and the Due Process Clause of the Fifth Amendment were violated when the district court increased his offense level by two because he was a "leader" in the criminal activity. See Sentencing Guidelines 3B1.1(c). Alternatively, Woods argues that if there was no violation of his constitutional rights, there simply was insufficient evidence before the district court to show that he was, in fact, a "leader" in the criminal activity and that, such being the case, his offense level should not have been increased by two. We shall consider these two matters in reverse order, since if the record before the district court at the time of sentencing did not support a finding that Woods was a "leader" in the criminal activity, then we need not reach the constitutional issues.
 
 
 18
 Sentencing Guidelines 3B1.1 provides as follows:
 
 3B1.1. Aggravating Role
 
 19
 Based on the defendant's role in the offense, increase the offense level as follows:
 
 
 20
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 
 
 21
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 
 
 22
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
 
 
 23
 So, under Sentencing Guidelines 3B1.1(c), if Woods was "an organizer, leader, manager or supervisor in any criminal activity other than that described in (a) or (b)," his offense level should be increased by two levels. From the presentence report we learn that pursuant to a search warrant, the residence where Woods resided was searched by authorities who "found a complete operational clandestine methamphetamine laboratory." Woods and four others were taken into custody at the time of the search. And, as above indicated, Woods later advised the probation officer that "it was his lab that he had set up" and that the co-defendants were "just more or less there."
 
 
 24
 The presentence report also indicates that a confidential informant stated that he had been in the residence in question prior to the search and that he had seen Woods and two others "cooking" methamphetamine in the basement. One of Woods' co-defendants, Daniel Martinez also pled guilty to Count II of the indictment, and the other defendant, Jill Butterfield, pled guilty to Count I of a misdemeanor information charging her with possession of a controlled substance in violation of 21 U.S.C. 844. Further, Woods advised the probation officer that he had a long standing drug abuse problem and that although he initially manufactured the methamphetamine for his personal use, he later began selling it in order to support his own habit.
 
 
 25
 Without belaboring the point, we believe the presentence report, which was adopted by the district court, supports a finding that Woods was a "leader" in the criminal activity. Certainly such finding is not "clearly erroneous," which is our standard of review. See United States v. Reid, 911 F.2d 1456 (10th Cir.1990), cert. denied, 498 U.S. 1097 (1991) and United States v. Backas, 901 F.2d 1528 (10th Cir.1990), cert. denied, 498 U.S. 970 (1990). In this regard, see also United States v. Beaulieu, 893 F.2d 1177, 1182 (10th Cir.1990), cert. denied, 497 U.S. 1038 (1990), where we said that we will not reverse a district court's finding that a defendant was an "organizer or leader" of a criminal activity unless "the court's finding was without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made."
 
 
 26
 Under the terms of the "Statement" made to the district court by Woods at the time he pled guilty to Count II of the indictment, Woods, his attorney, and the government attorney all knew that the district court was not bound by the government's belief and recommendation "that no adjustments be made for [Woods'] role in the offense." However, defense counsel argues, in this Court, that because of the government's promise not to recommend an upward adjustment in Woods' offense level because of his role in the criminal activity, a promise which the government incidentally kept, he, in turn, advised Woods to be candid and completely truthful in his interview with the probation officer. It is in this setting that counsel, on appeal, argues that his Fifth Amendment right not to be compelled to incriminate himself and his Fifth Amendment right to due process were violated. We do not agree with this argument.
 
 
 27
 In our view, Woods' self-incrimination argument is fully answered by United States v. Rogers, 921 F.2d 975 (10th Cir.1990), cert. denied, 498 U.S. 839 (1990). In that case, we held that the defendant's admission to the probation officer to trafficking heroin in an amount greater than that alleged in the indictment, resulting in a downward adjustment in his offense level for acceptance of responsibility but, at the same time, resulting in a greater increase in his base offense level, did not violate his Fifth Amendment privilege against self-incrimination. In so holding, we specifically stated that a defendant is not entitled to a Miranda warning at a post-conviction presentence interview. See Miranda v. Arizona, 384 U.S. 436, (1966). Without particular comment, Rogers was followed by this Court in United States v. Mayes, 917 F.2d 457, 466 (10th Cir.1990), cert. denied, 498 U.S. 1125 (1990).
 
 
 28
 We do not regard United States v. Shorteeth, 887 F.2d 253 (10th Cir.1989), relied on by Woods, as being apposite. Shorteeth was not concerned with the Self-Incrimination Clause of the Fifth Amendment, but was concerned with a specific Sentencing Guideline, i.e. 1B1.8(a). That guideline provides that where a defendant agrees to cooperate with the government by providing information concerning the unlawful activities of others, and the government agrees that self-incriminating information so provided shall not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided by the agreement. That is not our case.
 
 
 29
 Woods also argues that his Fifth Amendment right to due process was violated in the compilation of his presentence report. In connection therewith, counsel again suggests that Woods should have been given a Miranda warning before being interviewed by the probation officer. That argument is fully considered, and rejected, in United States v. Rogers, supra.
 
 
 30
 Judgment affirmed.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 Honorable Thomas M. Reavley, Senior Circuit Judge for the Fifth Circuit, sitting by designation