**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 12 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GARY D. DEWILLIAMS,

Defendant-Appellant.

Nos. 00-1242, 00-1243, 00-1370
(D.C. No. 99-CR-120-D)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , Chief Judge, **BALDOCK** , Circuit Judge, and **BRORBY** , Senior Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Gary D. DeWilliams appeals [1] from the district court's entry of judgment and sentencing following a jury trial. The jury found Mr. DeWilliams guilty of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g). He was sentenced to 293 months' imprisonment to be served consecutively to the undischarged term pending in another federal criminal case.

Police arrested defendant at a motel where they had gone to investigate possible criminal activity. When they saw defendant, they thought he might be a person they were seeking and asked for his identification. Defendant said his name was Andre Loftis and presented Colorado identification with that name. The photo, however, did not match defendant. In the course of the encounter, the police did a pat-down search for weapons. Defendant started struggling and a high-capacity magazine fell to the floor. Police handcuffed him after discovering he had a gun in the back of his pants.

Defendant testified he had discovered the gun between the mattresses in his brother's motel room when he lay down on the bed. He was afraid that his brother, Andre Loftis, and his friends were going to commit a crime. He called his stepfather in order to reach a relative who is a Denver detective [2] and put the

_____

[1] Mr. DeWilliams, proceeding pro se, filed appeals Nos. 00-1242 and 00-1243 prematurely before the entry of judgment and sentencing. Counsel timely filed appeal No. 00-1370. We have consolidated the appeals.

[2] The Denver detective testified that defendant's mother was "probably
(continued...)

gun and clip in a brown plastic bag to take them to his relative. When he left the room, he saw the police, but felt he could not talk to them because he was on federal parole and was worried about how they would react. He further testified that he gave them the wrong identification by accident and followed it with the correct one, both of which were in his sock.

On appeal, defendant argues the district court should not have published a stipulation to the jury without his consent. He also contends the court should have (1) permitted him to discharge his lawyer and represent himself at sentencing, (2) instructed the jury on his necessity defense, (3) granted his motions to suppress evidence, and (4) granted his motion to dismiss for speedy trial violations.

To obtain a guilty verdict on a charge of violating § 922(g), the government must prove: (1) defendant was a felon; (2) the gun traveled in interstate commerce, and (3) defendant possessed the gun. The stipulation presented to the jury conceded two of the three elements, i.e., that defendant had prior felony convictions and that the gun found on his person had traveled in interstate commerce. Defendant argues he did not agree to stipulating to the second element.

---

[2](...continued)
the stepsister to my wife's stepfather who passed away several years ago."
R. Vol. 13 at 335.

A defendant has a right under the Fifth and Sixth Amendments to have a jury determine guilt beyond a reasonable doubt on every element of a charged offense. United States v. Gaudin, 515 U.S. 506, 509-10 (1995) (United States Constitution "require[s] criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"). A defendant may stipulate to elemental facts, thus waiving his right to a jury trial on that element. United States v. Mason, 85 F.3d 471, 472 (10th Cir. 1996). Before accepting the stipulation, however, the court must determine whether *the defendant* agreed to the stipulation. See, e.g., Johnson v. Cowley, 40 F.3d 341, 346 (10th Cir. 1994). While the district court need not directly question the defendant about the stipulation, the court may only accept it "so long as the defendant does not dissent from his attorney's decision." Hawkins v. Hannigan, 185 F.3d 1146, 1155 (10th Cir. 1999) (upholding evidentiary stipulation against Sixth Amendment challenge because "there is no evidence that [defendant] disagreed with or objected to his counsel's decision"); see also United States v. Herndon, 982 F.2d 1411, 1418 (10th Cir. 1992) (district court would be better advised to directly address defendant to ensure "stipulation is entered into voluntarily, that the defendant understands the stipulation, and that the stipulation has a factual basis," though where "district court took great care to ensure [defendant],

through his trial counsel [and in defendant's presence], understood the nature of the stipulation" this court "cho[se] . . . not to exercise our supervisory power" to disturb resulting conviction on this basis).

We agree that defendant himself did not voluntarily stipulate to the second element. Before trial, the government informed the court that "defendant may or may not agree with this stipulation." R. Vol. 12 at 8. The court inquired of counsel whether he agreed to the stipulation and counsel stated that he felt the stipulation was in his client's best interests. Prior to publishing the stipulation to the jury, the government told the court that defendant had "made it clear to his attorney as well as to the government that he does not wish to stipulate to the . . . second point [of the stipulation], which is that the gun and the ammunition involved in this case traveled in interstate [commerce]." R. Vol. 12 at 169. Defense counsel told the court: "There is a stipulation. It stands." Id. at 170. The stipulation was read to the jury. Finally, after the jury retired to deliberate, counsel informed the court that defendant "maintains his objection to my stipulation to the interstate element." Id., Vol. 13 at 437.

The court did not ask defendant about his purported disagreement, nor did defendant volunteer any comment to indicate that he did not agree with the stipulation. Prior to any discussion about the stipulation, however, defendant had twice tried to tell the court that he was not represented by counsel and had

-5-

tried to speak. The court told him, "You cannot address me; you're represented by counsel. I will not let you speak to the Court other than through your lawyer. That's why you have retained counsel." Id. at 8.[3] It clearly appears that any attempt by defendant personally to indicate he did not agree with the stipulation would have been rebuffed.

Due to this unique situation, we cannot hold defendant at fault for not attempting to speak directly to the court. The government, however, had made the court aware of defendant's position. While we do not require that the court directly address the defendant to determine whether he agrees to the stipulation, see Herndon , 982 F.2d at 1418, in a situation such as this, where the court was affirmatively made aware defendant did not agree, the court was under a duty to investigate further.

As error occurred, we next discuss whether the error can be deemed harmless pursuant to Fed. R. Crim. P. 52(a). [4] The government bears the burden of proving a lack of prejudice under a trial error analysis. See United States v.

---

[3] Counsel had earlier tried to withdraw from the case. The court denied his motion viewing defendant's behavior as attempts to further delay the trial. Defendant had a total of three counsel before the district court and has had three counsel before this court. Each time new counsel was appointed, the trial date was delayed. The court's position is easily understood.

[4] Because defendant brought this issue to the attention of the district court, we review it under the Fed. R. Crim. P. 52(a) harmless error standard, not Rule 52(b)'s standard of plain error.

<u>Olano</u>, 507 U.S. 725, 734 (1993). To warrant reversal, a harmless "error must have been prejudicial: It must have affected the outcome of the district court proceedings." <u>Id.</u> In reviewing the claim, we evaluate the effect of the error on the reliability of the jury verdict. <u>See</u> <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 279 (1993). Trial error which occurs "during the presentation of the case to the jury . . . may . . . be quantitatively assessed in the context of the other evidence presented in order to determine whether its [effect] was harmless beyond a reasonable doubt." <u>Arizona v. Fulminante</u>, 499 U.S. 279, 307-08 (1991). If error occurred and it is deemed harmless, i.e., it did not result in a fundamentally unfair trial, the conviction should be affirmed on the basis "that the record developed at trial established guilt beyond a reasonable doubt . . . ." <u>Pope v. Illinois</u>, 481 U.S. 497, 502-03 (1987) (quotation omitted). [5]

A harmless error analysis shows that vacation of the judgment is required because the record contains no evidence at all on the second element. The government had two witnesses available to testify on that element. When counsel and the government agreed to the stipulation, the court permitted the witnesses to leave. As the government was aware of defendant's reservations about entering into the stipulation, it could have presented its witnesses at trial

---

[5] We need not address the question of whether the error might be structural because the record in this case reveals that the error was <u>not</u> harmless under our harmless-error analysis. Thus, the result is the same under either approach.

to establish the second element without violating the strictures set forth in Old Chief v. United States, 519 U.S. 172, 191-92 (1997). See United States v. Tan, 254 F.3d 1204, 1213 (10th Cir. 2001) ("Old Chief does not require the exclusion of other crimes evidence where there is a stipulation to an element of the charged crime where the evidence is offered to prove an element other than felony-convict status.").

To find the error here harmless, we would have to speculate as to the government's evidence on the second element. This we may not do. "The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action . . . ." Sullivan, 508 U.S. at 280. Further, if we were to hold that the government could have presented sufficient evidence on the second element, "the wrong entity [would] judge the defendant guilty." Id. at 281 (quotation omitted).

We will address defendant's remaining appellate issues as they may arise again at retrial. Defendant argues that the trial court should have permitted him to proceed pro se at sentencing. A defendant has an unqualified right to self-representation only if the right is demanded before trial. United States v. Mayes, 917 F.2d 457, 462 (10th Cir. 1990) "If the right is not asserted before trial, it becomes discretionary with the trial court whether to allow the defendant to proceed *pro se*." Id. (quotation omitted). Further, "[t]o invoke the right of

self-representation, defendant must clearly and unequivocally assert his intention in a timely manner." United States v. Beers , 189 F.3d 1297, 1303 (10th Cir. 1999). Defendant filed a motion to proceed pro se at sentencing on July 27, 2000. He filed a motion for appointment of new counsel on August 4, 2000. At sentencing, counsel indicated that defendant desired new counsel. Defendant did not "clearly and unequivocally assert his" desire to proceed pro se.

Defendant argues that the court should have instructed the jury on his necessity defense. Defendant testified at trial that he had discovered the gun when he lay down on a bed in the motel room his brother had rented. He feared his brother was going to attempt a drug ripoff and took the gun to prevent any such action.

"The refusal to give a particular jury instruction, even if the instruction is an accurate statement of the law, is within the discretion of the district judge." United States v. Turner , 44 F.3d 900, 901 (10th Cir. 1995) (quotation omitted). "A defendant is not entitled to an instruction which lacks a reasonable legal and factual basis." Id. (quotation omitted).

"The defense of necessity does not arise from a 'choice' of several courses of action . . . . It can be asserted only by a defendant who was confronted with . . . a crisis which did not permit a selection from among several solutions, some of which did not involve criminal acts." Id. at 902 (quotation omitted).

Defendant had several reasonable legal options he could have pursued.     See

United States v. Bailey   , 444 U.S. 394, 410 (1980) ("if there was a reasonable,

legal alternative to violating the law . . . the defense[] [of necessity] will fail").

The district court did not abuse its discretion in refusing to give this instruction.

Defendant could have called his relative to come to the motel to get the gun or

he could have told Aurora police that he was a convicted felon, but had a gun on

his person as he was afraid a crime was about to be committed.

Defendant contends the court should have granted his motions to suppress

evidence the police discovered upon searching the motel room.  Defendant had

told the officers to look in the room to find his U.S. Marshal identification.  No

illegal search and seizure occurred.  Most importantly, the evidence necessary to

establish the elements of the crime with which he was charged was the gun and

ammunition found on his person.  No error occurred.

Finally, defendant asserts the court should have granted his motion to

dismiss for speedy trial violations.  Defendant made his initial appearance

April 16, 1999.  Trial commenced June 6, 2000.  However, no error occurred.

The delays in this case resulted from motions defendant filed in district court,

consideration of those motions by the court, and defendant's requests for

continuances and are excluded in computing the time within which trial must

commence.   See 18 U.S.C. § 3161(h).

The judgment of the United States District Court for the District of Colorado is VACATED and the case is REMANDED to the district court for further proceedings in accordance with this order and judgment.

Entered for the Court

Wade Brorby
Senior Circuit Judge