Michael JACKSON, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 444, 2002.

Supreme Court of Delaware.

Submitted: March 18, 2003.

Decided: April 29, 2003.

Robert M. Goff, Jr., Assistant Public Defender, Wilmington, for appellant.

William M. Kelleher, Department of Justice, Wilmington, for appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices, constituting the Court en Banc.

HOLLAND, Justice:

In January 2000, Michael P. Jackson entered a guilty plea to trafficking in cocaine. Jackson's sentencing was deferred, pursuant to Del.Code Ann. tit. 11, §§ 6705 and 6712, in order to allow him the alternate opportunity of completing the boot camp program. After completing the six-month first phase of that program, the on-site military-style training, Jackson violated the ensuing probation component, rendering him a boot camp "failure."

Nevertheless, the Superior Court decided to give Jackson a second opportunity to succeed at boot camp. Therefore, rather than ordering Jackson to be incarcerated at Level V to serve the mandatory sentence for trafficking in cocaine, the Superior Court permitted Jackson to return to the first phase of the boot camp program. After beginning the on-site-military-style training phase of the boot camp anew, Jackson violated boot camp general order number five, resulting in his removal from the program.

The boot camp commander referred the matter to the Superior Court for a final resolution. After a hearing, the Superior Court ordered Jackson to be incarcerated to serve the remainder of his three-year minimum mandatory Level V sentence for trafficking in cocaine. We have concluded that the judgment of the Superior Court must be affirmed.

### Facts

The record reflects that one day, during Jackson's renewed participation in the on-

site-military-style training phase of the boot camp program, he was assigned to work at the boot camp farm. While at the farm, Jackson remarked to his instructor: "Sir, it is such a nice day out, it makes me want to go home, it makes me want to escape." Another cadet had, in fact, recently escaped from boot camp. The instructor interpreted Jackson's comment to be a threat of escape. The instructor concluded that Jackson's comment had violated boot camp general order number five which provides: "I will speak and act with good purpose."

The instructor reported Jackson's comment. As a result, Jackson was removed from the boot camp program. The charging document which caused the hearing be scheduled was a letter from a boot camp counselor to the Superior Court. The letter stated that "Cadet Jackson, while outside the secure confines of Sussex boot camp, communicated a threat to attempt to escape." The letter claimed that Jackson had "jeopardized the security" at boot camp and had "disrupted the work crew." The letter alleged that Jackson's continuation in the program "posed far too great a security risk" and, therefore, he was "dismissed from the program."

On July 3, 2002, Jackson was tried before the Superior Court for a violation of his boot camp status. According to Jackson, his comments were made in jest and he did not intend them to be taken literally. According to the instructor, Jackson's comment concerning escape was the first thing Jackson said to him that day. The instructor described Jackson's demeanor as sullen and depressed. He could not detect any humor in Jackson's comment.

The Superior Court found that Jackson's statement was "very much like a bomb threat" and was "against the rules" and "in violation of your commitment to boot camp." Jackson was sentenced to five years imprisonment at Level V, suspended after the three minimum mandatory years.

### Valid Rule Violated

On appeal, Jackson's first argument is that his statement about an escape was not barred by any specific rule. This Court has held "[p]robation cannot be revoked in the absence of a violation of an express condition of probation or of a condition so clearly implied that the probationer, in fairness, can be said to have notice of it." [1] Section 6707 provides:

> No offender may participate in the boot camp program unless such individual voluntarily enrolls by agreeing to be bound by a written contract with the Bureau, which contract shall clearly set forth the obligations, duties, responsibilities and expectations with which such offender must comply. A representative of the Bureau shall also explain to the offender the intended benefits of the program, and the consequences of failing the program. [2]

The record reflects that there are ten general orders at Delaware's boot camp. [3] Each of the ten general orders is made known to the boot camp cadets upon

1. *Liles v. State*, No. 105, 1992, 1992 WL 401568, at *2 (Del. Dec.7, 1992) (Holland, J.) (ORDER) (citations omitted).

2. Del.Code Ann. tit. 11, § 6707 (2001).

3. Those ten general orders are: "1) I will follow all orders given by all staff at all times; 2) I will refrain from the use of violence and/or threats of violence; 3) I will not use drugs or alcohol; 4) I will tell the truth with compassion; 5) I will speak and act with good purpose; 6) I will remain alert and participate in Network at all times; 7) I will adhere to the Network Group Contract at all times; 8) I will maintain a positive attitude at all times; 9) I will maintain a military bearing at all times; and 10) I will remain alert and participate in ASAT, Education, and Recreation during all sessions."

enrollment. At issue in this case is general order number five which states that: "I will speak and act with good purpose."

There is no doubt that Jackson knew about all of the general orders specifically and the other expectations about his conduct, pursuant to the agreement he signed upon entry into the boot camp program. In fact, Jackson testified he understood that it was inappropriate to even joke about escaping from boot camp. Moreover, Jackson admitted that in retrospect his statement about an escape was irresponsible and "a terrible mistake."

Therefore, Jackson's first argument on appeal is contradicted by his own testimony. Jackson acknowledged that his statement about escaping, even if in jest, was "not speaking with a good purpose" and, therefore, inappropriate in boot camp. Accordingly, the record supports the Superior Court's determination that Jackson's reference to escaping violated boot camp general order number five.

Jackson's alternative argument on appeal is that general order number five violates his First Amendment rights as guaranteed by the United States Constitution. As the United States Supreme Court has observed, "inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled."[4] "Probation restrictions may affect fundamental rights such as freedom of speech and freedom of association if the conditions are primarily designed to meet the ends of rehabilitation and protect the public."[5] Accordingly, "[c]ourts have consistently upheld imposition of conditions of probation that restrict a defendant's freedom of speech and association when those conditions bear a reasonable relationship to the goals of probation."[6] *A fortiori*, such restrictions are valid in this case since the first phase of the boot camp program is not probation but is a form of intensive incarceration administered by the Bureau of Prisons.[7]

The Superior Court properly analogized Jackson's escape comment to a bomb threat.[8] In the boot camp setting, a prohibition on speech that references an escape from custody bears a reasonable relationship to boot camp's rehabilitative goals and protection of the public. Consequently, Jackson's First Amendment argument is also without merit.

### Conclusion

We hold that Jackson's reference to an "escape" was violative of boot camp general order number five which states, "I will speak and act with good purpose." The applicable statute provides that upon a finding that an offender has violated "any of the terms or conditions of supervision or probation at the boot camp or at level IV or Level III, the court shall proceed to sentencing on all charges for which sentencing was originally deferred."[9] Thus,

---

4. *Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). *Accord McAllister v. State,* 807 A.2d 1119 (Del.2002).

5. *United States v. Peete,* 919 F.2d 1168, 1181 (6th Cir.1990) (citation omitted); *see also United States v. Ritter,* 118 F.3d 502, 504 (6th Cir.1997).

6. *United States v. Turner,* 44 F.3d 900, 903 (10th Cir.1995), *cert. denied,* 515 U.S. 1104, 115 S.Ct. 2250, 132 L.Ed.2d 258 (1995). *See also Commonwealth v. Lapointe,* 435 Mass. 455, 759 N.E.2d 294, 298 (2001) ("A proba-tion condition is enforceable, even if it infringes on a defendant's ability to exercise constitutionality protected rights, so long as the condition is 'reasonably related' to the goals of sentencing and probation.")

7. *See* Del.Code Ann. tit. 11, ch. 67 "Boot Camp Intensive Incarceration."

8. *See United States v. Cothran,* 286 F.3d 173 (3d Cir.2002).

9. Del.Code Ann. tit. 11, § 6712(h).

the Superior Court properly sentenced Jackson to be incarcerated on the originally deferred charges.[10]

The judgment of the Superior Court is affirmed. Pursuant to Supreme Court Rule 18, the time within which a motion for reargument may be filed in this matter is shortened to three days from the date of this Opinion.